## LA GUARDIA ET AL. *v.* STATE.

[No. 127, October Term, 1947.]

452

*Decided May 19, 1948.*

The cause was argued before MARBURY, C. J., DELA-
PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Hamilton O'Dunne* for the appellants.

*J. Edgar Harvey, Assistant Attorney General,* with
whom were *Hall Hammond, Attorney General,* and *John
Grason Turnbull, State's Attorney for Baltimore. County,*
on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

James V. La Guardia and Delmar Eugene Foster, ap-
pellants, and Gilmer P. McArthur were indicted for rape,
assault with intent to rape, and assault, and were tried
jointly before two judges and a jury in the Circuit Court
for Baltimore County. The court instructed the jury
that they might render any one of five possible verdicts
against each defendant: (1) guilty on the first count,
(2) not guilty on the first count, guilty on the second
count, (3) not guilty on the first count, guilty on the
second count without capital punishment, (4) not guilty
on the first and second counts, guilty on the third count,
and (5) not guilty. The jury found all three defendants
guilty on the first count. The Court sentenced La Guardia
to be hanged, Foster to be confined in the Maryland Peni-
tentiary for life, and McArthur to be confined therein for
21 years. La Guardia and Foster appealed, La Guardia
*in forma pauperis.* Where a sentence of death is imposed,
and the defendant appeals *in forma pauperis,* the Court
of Appeals reviews any reviewable errors therein without
regard to technical errors, defects or exceptions which do
not affect the substantial rights of the parties. Laws of
1945, ch. 1068, Code Supp. 1947, Art. 5, sec. 88A; *Demby
v. State,* Md., 48 A. 2d 586, 591.

First. Appellants contend that the court should have
instructed the jury that, if they should return a verdict
of guilty on the first count, they had the right to qualify
the verdict by adding the words "without capital punish-

454

ment." In 1809 the Legislature enacted a criminal statute which prescribed the punishment for murder and rape in this State. Laws of 1809, ch. 138; Laws of Maryland, revised by Maxcy, 1811, vol. 3, 458, 460. In 1916 the Legislature re-enacted the section prescribing the punishment for first-degree murder, so as to read as follows: "Every person convicted of murder in the first degree, his or her aiders, abettors and counsellors, shall suffer death, or undergo a confinement in the penitentiary of the State for the period of their natural life, in the discretion of the Court before whom such person may be tried; provided, however, that the jury in a murder case who render a verdict of murder in the first degree, may add thereto the words 'without capital punishment,' in which case the sentence of the court shall be imprisonment for life, and in no case where a jury shall have rendered a verdict in manner and form as hereinbefore prescribed, 'without capital punishment,' shall the court in imposing sentence, sentence the convicted party to pay the death penalty." Laws of 1916, ch. 214, Code 1939, art. 27, sec. 481.

In 1935 the Legislature re-enacted the section prescribing the punishment for rape. But in so doing, it did not give the jury the right to add "without capital punishment" to a verdict of guilty, as it did in the case of murder. The rape section provides: "Every person convicted of the crime of rape or as being accessory thereto before the fact shall, at the discretion of the Court, suffer death, or be sentenced to confinement in the Penitentiary for the period of his natural life, or undergo a confinement in the Penitentiary for not less than eighteen months nor more than twenty-one years; * * *." Laws of 1935, ch. 284; Code 1939, Art. 27, sec. 544.

Appellants rely on Section 13, which prescribes the punishment for assault with intent to have carnal knowledge of a female child under the age of 14 years, assault with intent to rob or murder, and assault with intent to commit a rape. The first two classes of assault are punishable by confinement in the Penitentiary, while assault

with intent to commit a rape is punishable either by death or by confinement in the Penitentiary. Section 13, which was reenacted in 1943, contains the following proviso, patterned after the murder section: "provided, however, that the jury before whom any person indicted for the crime of an assault with intent to commit a rape shall be tried, if they find such person guilty thereof, may add to their verdict the words 'without capital punishment', in which case the sentence of the court shall not exceed twenty years in the Penitentiary, and in no case where a jury shall have rendered a verdict in manner and form as hereinbefore prescribed, 'without capital punishment', shall the court in imposing the sentence, sentence the convicted party to pay the death penalty or to be confined for more than twenty years in the Penitentiary." Laws of 1943, ch. 402, Code Supp. 1947, Art. 27, sec. 13.

Appellants contend that the clause beginning with the words "and in no case" applies to every crime for which the penalty of death may be imposed. That contention is not tenable. The Act of 1943, as its title shows, does no more than re-enact Section 13, sub-title "Assault with Intent to Murder, Ravish or Rob." Section 13 applies only to the classes of assault specified therein. It does not apply to other sections of the Code, especially in view of the constitutional requirement that every law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title. Md. Const. Art. 3, sec. 29. A restriction in the title of an Act must either confine the operation of the Act to conform to that description, if that construction is possible, or render the Act void to the extent of the conflict. *Buck Glass Co. v. Gordy,* 170 Md. 685, 185 A. 886.

Second. Appellants urge that the verdicts of the jury in this case are invalid because one of the jurors was attended by a physician after the first day of the trial and before the testimony had been concluded. But as Chief Judge Alvey said in *Stout v. State,* 76 Md. 317, 25 A. 299, even in the trial of capital cases there are many occasions when in reason and from proper regard to the needs of

humanity, it may become necessary to allow a temporary separation of the jury without necessarily breaking up the trial; otherwise protracted trials could seldom be brought to a final conclusion.

In the case at bar there was no suggestion that the juror, who suddenly became ill, was influenced in any way or even approached concerning the case. It was while the jurors were confined on the night of the first day of the trial that he suffered an attack of appendicitis; but after he was attended by the physician he recovered sufficiently to be able to attend court on the following day, when the trial was concluded. He heard all of the evidence and participated in the deliberations of the jury, and he was one of the panel that rendered the verdicts. The mere fact that he needed medical attention did not operate to the prejudice of the accused. We hold that temporary separation of a juror from the other members of the panel may be permitted for sufficient cause at any time, even in a capital case, when attended with such precautions and safeguards as will secure entire freedom from outside influence. Each case rests upon its own peculiar circumstances and is within the sound discretion of the trial court. The complaining party relying upon a violation of the rule against separation of jurors has the burden of showing that the protection intended to be afforded by the rule was lost; and the question is not reviewable by the Court of Appeals except where it is affirmatively shown that the complaining party has been prejudiced by the action of the trial court. We specifically hold that an emergency separation of a juror from the other members of the panel because of sudden illness, where the circumstances indicate that he had no communication with any outsider except a physician, is not such a separation as will invalidate the verdict. *Haley v. State*, 123 Miss. 87, 85 So. 129, 10 A. L. R. 462.

Third. It is finally contended that one of the trial judges committed error when he sent a communication to the jury during the course of their deliberations. The accepted practice of guaranteeing a public trial to an

accused in this country had its origin in our English commonlaw heritage. The exact date of its origin is obscure, but it likely evolved long before the settlement of America as an accompaniment of the ancient institution of jury trial. In the recent case of *In re Oliver*, 68 S. Ct. 499, Justice Black observed that four States, Massachusetts, New Hampshire, Virginia and Wyoming, appear to have neither constitutional nor statutory provisions specifically requiring that criminal trials be held in public, although all have constitutions guaranteeing an accused the right to a jury trial; and today almost without exception every State by constitution, statute, or judicial decision, requires that all criminal trials be open to the public. Article 5 of the Maryland Declaration of Rights provides that the inhabitants of Maryland are entitled to the Common Law of England and the trial by jury according to the course of that law. Article 21 provides that every man has a right to be confronted with the witnesses against him in all criminal prosecutions. Many constitutional safeguards intended to secure an impartial trial, though procedural only, are substantial rights which ought not to be whittled away. Among these is the rule entitling the defendant to be present at every stage of the trial from the time the jury is impaneled until it renders the verdict. *Shields v. United States*, 273 U. S. 583, 47 S. Ct. 478, 479, 71 L. Ed. 787.

In a felony case the trial judge should not send any important communication to the jury in reference to the case after it has been submitted to them, except in open court and with the knowledge of the accused and his counsel and their opportunity to be present. Private communications between the judge and jury, even though harmless in themselves, may open the way to abuses and destroy public confidence in legal procedure. *Ray v. United States*, 8 Cir., 114 F. 2d 508. In *Duffy v. State*, 151 Md. 456, 135 A. 189, this Court reversed a conviction in the Criminal Court of Baltimore City because, while the defendant was locked up in another room in the court house, the trial judge repeated to the jury the

instructions which he had previously given in the defendant's presence, although the defendant's attorneys were in the court room at the time and no injury to the defendant was affirmatively shown. In that case the record did not show what the instructions were. This Court said that the accused ought not to be at the mercy of speculation as to whether the improper procedure did or did not injure him. The Court accordingly held the procedure reversible error in order to make certain that the accused would not be deprived of any constitutional right. In so holding the Court said that, as the jury did not understand the instructions as first given, the accused, if present, might have asked that they be made clearer or might have objected to their form; that they covered fourteen separate counts in four indictments and related, as far as the accused was concerned, to the most vital thing in the case, the verdict of the jury.

We hold that if the record shows affirmatively that the appellant was prejudiced by an improper communication of the judge with the jury, there is reversible error; and also that if the record shows error by such communication, but does not show whether or not the error was prejudicial, it is presumed to be prejudicial and requires a reversal. *Little v. United States,* 10 Cir., 73 F. 2d 861, 96 A. L. R. 889; *Ah Fook Chang v. United States,* 9 Cir., 91 F. 2d 805, 810. On the other hand, if the record shows affirmatively that the communication had no "tendency to influence the verdict" (*Duffy v. State,* 151 Md. 456, 474, 135 A. 189, 195), the judge's impropriety in communicating with the jury out of the presence of the defendant does not require a reversal. *Dodge v. United States,* 2 Cir., 258 F. 300, 7 A. L. R. 1510; *Outlaw v. United States,* 5 Cir., 81 F. 2d 805. In the Court below the jury were instructed before they retired for their deliberations that they had the right in their discretion to make any recommendation of mercy which they desired to make if they found the defendants guilty on any of the counts of the indictment. During their deliberations they sent a message to the court inquiring whether less than twelve jurors could recommend mercy for one of

the defendants. The judge sent them a reply that less than twelve could recommend mercy. Less than a majority did recommend mercy for the defendant who has not appealed. No juror made any recommendation concerning either of appellants. The record shows definitely what the judge's communication was. The communication could not have caused appellants any prejudice. It had no direct relation to the verdict whatever and no possible indirect constraining relation.

In *McBean v. State*, 83 Wis. 206, 53 N. W. 497, 499, where the defendant was convicted of assault with intent to kill, the jury asked the court after they had retired whether, on bringing in a verdict of guilty, they could depend on the clemency of the court, and the court sent a reply that they could. The jury thereupon returned a verdict of guilty and recommended clemency for the defendant. The Supreme Court of Wisconsin reversed the judgment, but plainly stated that the question which the jury presented was harmless, and that the prejudicial error was the promise of the judge that if the jury found the prisoner guilty they might rely upon him to extend clemency. The Court said in the opinion: "It sufficiently appears from the verdict returned that the jury did rely upon such promise. The promise thus secured was well calculated to overcome reasonable doubts, and coerce an agreement for conviction. It was an unauthorized interference with the deliberations of the jury."

A similar decision was reached in *State v. Kiefer*, 16 S. D. 180, 91 N. W. 1117, 1119, 1 Ann. Cas. 268, where the jury while deliberating sent a paper to the court asking whether the jury could recommend the defendant to the mercy of the court. The judge wrote on the paper: "Yes; and I have made it an invariable rule * * * to follow such recommendations." Although the judge did not make any definite promise, his language was in effect an assurance that the jury could rely upon the clemency of the court. The Supreme Court of South Dakota, in granting a new trial, said: "The jurors might very naturally conclude from the language used that they could rely upon him to extend clemency to the accused in case

he should be convicted, and it might have the effect to induce the jurors to disregard any reasonable doubts they might have as to the guilt of the accused. * * * And while it is the duty of the court to instruct the jury upon the law of the case, it should not in any manner attempt to influence its deliberations, and the court should be exceedingly careful to refrain from all expressions of opinion that might be calculated to influence the minds of the jurors."

The case at bar is distinguishable from the Wisconsin and South Dakota cases, because the trial judge did not give any intimation that the court would extend clemency. As only five jurors made the recommendation of mercy for McArthur, it is apparent that there was no inducement from the judge that had any effect of constraining a verdict of guilty, even in the case of McArthur, who did not take an appeal. The practice of permitting the jury to recommend the defendant to the mercy of the court is of great antiquity. However, in the absence of statute, the jury have no express authority to add a recommendation of mercy to a verdict of guilty. In Maryland there is no statute authorizing the jury to recommend mercy to the accused in any criminal case. But it is generally held that, in the absence of statutory authorization, a recommendation of mercy is mere surplusage and does not affect the verdict and require a reversal. *People v. Warner*, 289 Mich. 516, 286 N. W. 811; 138 A. L. R. 1250.

As this case is distinguishable from the case of *Duffy v. State*, 151 Md. 456, 135 A. 189, it is unnecessary on this appeal to consider what exceptions, if any, there are to the general rule stated in that case, which was based upon the flagrant violation of constitutional rights in *Dutton v. State*, 123 Md. 373, 91 A. 417, Ann. Cas. 1916, 89.

Finding that the record shows no reversible error in the action of either the trial judges or the jury, we must affirm the judgments of conviction.

*Judgements affirmed.*