## THOMAS EVERETT SAUL *v.* STATE OF MARYLAND

[No. 265, September Term, 1968.]

Decided *April 22, 1969.*

*Howard Goldman (Barry Silber* on the brief) for appellant.

*John J. Garrity, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* on the brief, for appellee.

ORTH, J., delivered the majority opinion of the Court. MURPHY, C.J., and ANDERSON, J., dissent. Dissenting opinion by MURPHY, C.J., in which Anderson, J., concurs, on page 551 *infra*.

The appellant, charged with crimes against the person of an 8 year old girl, was tried in the Circuit Court for Prince George's County before a jury. He was convicted of murder in the first degree, assault with intent to rape and abduction. A life sentence was imposed on each of the first two convictions, to run concurrently, and a sentence of 20 years was imposed on the other conviction, to run consecutively with the life sentence. The appellant filed pleas of not guilty and that he was insane at the time of the commission of the alleged crimes. See Md. Code (1968 Repl. Vol.), Art. 59, § 9(b). The case went to the jury under both pleas. See *Strawderman v. State,* 4 Md. App. 689. At the close of all the evidence the court instructed the jury. The charge included the following:

> "A question in this case has been raised, and there has been considerable testimony concerning the mental capacity of the defendant.
>
> Under Article 59, Section 9 of the Code of Public Laws of the State of Maryland, a defendant is not responsible for criminal conduct and shall be found insane at the time of the commission of the alleged crime if, at the time of such conduct, as a result of mental disease or defect he lacked substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. Then it goes on to say that as used in this section the terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise

544

antisocial conduct. In other words, it is not to be considered a mental disease or defect if the only manifestation is by repeated criminal or antisocial conduct.

Now, the language in this statute is very important and should be borne in mind by you very carefully. The first consideration on the matter of mental capacity, in other words, whether he should be held responsible for his conduct, is whether or not there was a mental disease or defect. If you conclude from the testimony that there was no mental disease or defect then a necessary element of this defense would be lacking and it would not be proper to find the defendant not guilty by reason of insanity on that alone. There must not only be a mental disease or defect, as distinguished from an abnormality or personality trait or characteristic which fell short of a mental disease or defect, but there first must be found to be a mental disease or defect, and then if you are convinced beyond a reasonable doubt that there was a mental disease or defect, then—no, you must be convinced beyond a reasonable doubt that there was not a mental disease or defect, and unless you are convinced beyond a reasonable doubt that there was not a mental disease or defect then you would be justified in concluding that there was. Then you next go on to the question of whether such mental disease or defect caused him to lack substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law.

So that there will be no misunderstanding, I will repeat that the burden is on the State to convince you beyond a reasonable doubt, in addition to the matter of the offenses with which he is charged, but also that he had the mental capacity. And you must be convinced beyond a reasonable doubt that there was not a mental defect or disease which resulted in his lacking substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law."

The court also explained the possible verdicts in its charge and

before the jury retired they were given a written list of the possible verdicts as to each of the three indictments with the concurrence of the State and defense counsel and in the presence of the appellant. After the charge to the jury, the State and defense counsel presented closing arguments. The jury retired for their deliberations at 3:04 P.M., returned to the courtroom at 9:27 P.M. and rendered their verdicts. There is in the record by stipulation that while the jury were deliberating they sent a note to the court, signed by the foreman, reading, "May the jury have legal code Article 59 section 9." Counsel for the State and the appellant were called to the chambers of one of the two judges presiding at the trial. The other presiding judge was not present. Counsel examined the note, considered the request, and agreed that a photostatic copy of Art. 59, § 9(a) could be sent to the jury. It was delivered to the jury by the bailiff. Court did not re-convene and the jury did not return to the courtroom. The appellant was at no time present when the note was delivered to the judge, when the request was being considered by the judge and counsel or when the copy of the statute was delivered to the jury, as he was "detained at the time in a lock-up portion of the sheriff's office located in the court house." The appellant claims on appeal that this intercourse between the jury and the judge during his involuntary absence constituted reversible error.

The right of an accused—a person charged with a criminal offense, Md. Rule 702c—to be present at every stage of his trial was a fundamental right at common law preserved in this State by Art. 5, Declaration of Rights of the Constitution of Maryland and stated with particularity in Md. Rule 775. It is an absolute right which is personal to the accused and cannot be waived by his counsel and it is clear that it inures to him from the time the jury is impaneled until it reaches its verdict or is discharged; there can be no valid trial or judgment unless he has been afforded that right. *Midgett v. State*, 216 Md. 26. We considered the question in depth in *Young v. State*, 5 Md. App. 383, and concluded, at 390-391:

"(1) it is reversible error for the court to charge or instruct the jury trying the case, on the facts, the

law or the form of the verdict at any time during the involuntary absence of the defendant, even though the charge or instruction is a repetition of a charge or instruction previously given in whole or in part, prejudice being conclusively presumed; and

(2) it is reversible error for the court to communicate in any other manner with the jury trying the case, during the involuntary absence of the defendant unless the record affirmatively shows that such communication was not prejudicial or had no tendency to influence the verdict of the jury."

Here the delivery of the note from the jury to the judge was merely a "communication" as we construed that term in *Young*. See *Brown v. State,* 236 Md. 505. The reception of the request to have the statute, the conference with counsel and their argument pertaining thereto was not part of the trial. See *Brown v. State,* 225 Md. 349. But compliance with the request by submitting to the jury a copy of Art. 59, § 9(a) was a charge or instruction to the jury, whether given to them in open court or delivered to them in the jury room. The communication to the jury was clearly as to the law on responsibility for criminal conduct and thus was an instruction. In the language of Art. 59, § 9(a) it read:

"A defendant is not responsible for criminal conduct and shall be found insane at the time of the commission of the alleged crime if, at the time of such conduct as a result of mental disease or defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. As used in this section, the terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct."

When the judge reached his conclusion and was about to deliver the copy of the statute to the jury the trial resumed and the appellant had the absolute right to be present. *Palmer v. Commonwealth,* 130 S. E. 398, cited with approval in *Brown v. State,*

225 Md. 349, 352-353. The court had previously explained this law to the jury in the presence of the appellant, but we believe it obvious by the request of the jury that they did not fully understand the explanation or at least desired further explanation of it or felt it necessary to have its precise language before them in their consideration of it. The primary defense of the appellant was that he was not responsible for his criminal conduct and the major part of the evidence before the jury was on that issue. It was immaterial that the statement of the law given to the jury out of the presence of the appellant was a repetition of a charge or instruction previously given in whole or in part in his presence and it is no answer to say that nothing was done which might lawfully have been done had the appellant been personally present. *State v. Shutzler,* 82 Wash. 367, 475, quoted with approval in *Duffy v. State,* 151 Md. 456. And the presence of the appellant's counsel and even his express agreement to the action taken did not obviate the requirement that the appellant be present, for as we have stated, the right to presence at all stages of the trial is personal to the accused and cannot be waived by his counsel. *Young v. State, supra,* 389. We hold that the delivery of the copy of Art. 59, § 9(a) to the jury out of the presence of the appellant was reversible error.

Although we have held that the submission to the jury of the copy of the statute was an instruction, resulting in a conclusive presumption of prejudice as given during the involuntary absence of the appellant, even if it is assumed, as the State urges, that it was not an instruction but a mere "communication", there was still reversible error. The record before us does not affirmatively show that such communication was not prejudicial or had no tendency to influence the verdict of the jury. The rationale of the rule with respect to communications, as distinguished from instructions, does not turn on the absence of the accused but on the nature of the communication. Here the "communication" prescribed when a defendant is not responsible for criminal conduct and shall be found insane and spelled out the factors relevant thereto. We cannot say that it had no tendency to influence the verdicts of the jury, especially in light of the defense on which the appellant relied, the evidence with

regard to the question of sanity which was before the jury and the verdicts rendered.

In view of our holding we shall consider only one of the other questions presented by the appellant. As the State may re-try the appellant under our remand we feel it advisable, for the guidance of the lower court, to determine the admissibility of an opinion of a psychologist as to the insanity of the accused.

The appellant contends that the lower court erred in excluding the opinion of Dr. Morton Cooper, a clinical psychologist, that the appellant was suffering from a mental disease or defect and lacked substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. It was shown that Dr. Cooper had received degrees of Bachelor of Arts, majoring in psychology, Master of Arts in psychology and Doctor of Philosophy in psychology. He had extensive experience in clinical psychology although he was not a diplomate of the American Board of Examiners in Professional Psychology. Nor was he licensed to practice as a medical doctor having no degree of Doctor of Medicine. The lower court, in a proper exercise of its discretion, found that he was qualified as an expert psychologist. As such, the court held, he could testify, and he did so, as to the results of tests "generally accepted in his field" made by him on the appellant but he could not give an opinion as to the appellant's sanity and criminal responsibility. We agree with this ruling. The appellant cites *State v. Tull*, 240 Md. 49 as holding to the contrary but we do not so construe it. In *Tull* the Court observed that the Courts are divided on whether a psychologist is qualified to express an opinion as to mental disease or condition, as opposed to giving factually the results of his tests on and observations of the patient. "There has been and there is sharp disagreement as to whether a clinical psychologist is scientifically competent and hence legally qualified to make a diagnosis of the existence and character of a mental disease or condition and determine accurately whether there was causal relationship between such a disease or condition and an unlawful act." 240 Md. at 53. It discussed the education and experience usually required to qualify a psychologist as an expert to testify factually as to the results of his tests on and observations of an accused

but it did not find it necessary to decide whether a psychologist was qualified to express an opinion as to mental disease or defect or responsibilty for criminal conduct. However, the Court quoted part of a resolution adopted in 1954 by the American Medical Association, the Council of the American Psychiatric Association and the Executive Council of the American Psychoanalytical Association:

> "The medical profession fully endorses the appropriate utilization of the skills of psychologists, social workers, and other professional personnel in contributing roles in settings directly supervised by physicians. It further recognizes that these professions are entirely independent and autonomous when medical questions are not involved; but when members of these professions contribute to the diagnosis and treatment of illness, their professional contributions must be coordinated under medical responsibility." 240 Md. at 53.

The test of the responsibility for criminal conduct under the provisions of Md. Code, Art. 59, § 9(a) is predicated upon "mental disease or defect." We think that the existence of a "mental disease or defect" is first and foremost a *medical* problem. It is not to disparage the members of the medical profession who are trained and experienced in the diagnosis and treatment of mental illness to point out that even they frequently differ widely concerning its symptoms, nature, intensity and causal influence with respect to a crime committed or even if it exists as to certain person. It is not yet a matter susceptible of precise determination despite the great advances in medical science. Without question tests by and observations of qualified psychologists are invaluable to the psychiatrist in reaching his opinion as to whether as a result of mental disease or defect an accused is insane and the testimony of such psychologists as to the results of the tests made by him are properly admissible as a means of enlightening the trier of fact, to be considered by it as one of the means by which the psychiatrist reached his opinion as to the sanity or insanity of the accused. But an opinion as to the ultimate fact, whether or not the accused is

insane under the test prescribed by § 9(a), in fairness both to the accused and the State, should be reached by a medical diagnosis. Thus the opinion must be made by a medically trained psychiatrist in order to be admissible in evidence.[1]

We also think it advisable to call attention to our opinion in *Strawderman v. State, supra,* in which, discussing the procedure when the accused raises the defense that he was not responsible for his criminal conduct at the time of the commission of the offense, we said that the court should determine preliminarily whether the proof adduced in support thereof was sufficient to raise a doubt as to the sanity of the accused in the minds of reasonable men. 4 Md. App. 698. If it so finds it is only then that the issue goes to the jury. We noted in a jury trial such proof for the preliminary finding should be presented out of the presence of the jury. From the record before us it appears that no such preliminary determination was made and all the evidence on the issue raised by the plea that the appellant was insane at the time of the commission of the alleged crime was presented before the jury. We also call attention to Md. Code, Art. 59, § 9(b) which provides in relevant part: "At the trial of any case where there has been theretofore filed a plea of insanity at the time of the commission of the crime, the court shall direct the jury to render a special verdict on the sanity of the defendant at the time of the alleged crime." The court here did not expressly direct the jury to render such a special verdict and the written list of possible verdicts given to the jury did not include one that the jury found that the appellant was sane or one that he was insane but did include verdicts of "not guilty by reason of insanity." The jury returned only verdicts of guilty with no reference to a finding of sanity or insanity. We think that the statute requires a special verdict by the jury on their finding as to sanity or insanity, apart from their verdict of guilt

---

1. We note that § 639 of Md. Code, Art. 43, title "Health", subtitle "Psychologist's Certification Act" provides, "Nothing herein shall authorize any person to engage in the practice of medicine as defined by the laws of this State." Code, Art. 43, § 139 includes within the meaning of practice of medicine " * * * diagnosing * * * any mental ailment or supposed ailment of another * * *."

or innocence of the substantive offense.[2] Compare the former law codified in Md. Code (1964 Repl. Vol.) as Art. 59, § 7, which was repealed by Chapter 709, Acts 1967 as of 1 June 1967. And see *Turner v. State,* 5 Md. App. 584, in which we discussed the preliminary finding of the court as to sanity and the special verdict of the jury under Code, Art. 59, § 9 now in effect.

*Judgments reversed; cases remanded*
*for new trial.*

MURPHY, C.J., dissenting:

I dissent from that part of the court's opinion which holds that the lower court committed reversible error when, in appellant's involuntary absence, it complied with the request of the jury for a copy of the provisions of Maryland Code, Article 59, Section 9(a).

Quite clearly, an accused person has a common law right in this State to be present at every stage of his trial and the giving of instructions to the jury, or a repetition thereof, in whole or in part, is a stage of the trial. *Brown v. State,* 225 Md. 349; *Midgett v. State,* 216 Md. 26; *Young v. State,* 5 Md. App. 383.

Appellant and his counsel were both present in court when the jury was instructed by the trial judge at the close of all of the evidence. As part of its instructions, the court read to the jury the definition of insanity, as set forth in Article 59, Section 9(a). No exceptions were taken to the court's charge and the jury retired to deliberate. It thereafter sought no additional or further instructions. It did not request any clarification, modification, or amplification of the instructions. Nor did it indicate at any time that it failed to understand the court's instructions or was in any way confused. The jury simply asked the judge:

"May the jury have legal Code Article 59 section 9."

---

2. The practical effect of this requirement is that it not only indicates that the jury considered the issue of insanity before them whether their verdict be guilty or not guilty of the substantive offense but, if the verdict on the substantive offense is not guilty, it assures that when the verdict was reached because of a finding that the defendant was insane at the time of the commission of the offense, the court is made aware of such finding and may take such action with regard to the defendant as provided by Md. Code, Art. 59, § 11.

After consultation with counsel, but in the absence of the appellant, it was decided to photostat a copy of the statute and give it to the jury. It is not claimed that the copy was in any way inaccurate. Indeed, by the provisions of Section 19 of Article 1 of the Maryland Code, the document sent to the jury was part of a volume "legalized and made evidence of the Public General Laws enacted following 1957." The court, in sending to the jury a copy of the statute, communicated nothing to the jury more than or different from that which the jury had previously been told in the presence of appellant and his counsel.

I adhere to the view, as expounded in *Young,* that "it is reversible error for the court to charge or instruct the jury trying the case, on the facts, the law, or the form of the verdict at any time during the involuntary absence of the defendant, even though the charge or instruction is a repetition of a charge or instruction previously given in whole or in part." I cannot agree with the court that, within the meaning of *Young,* merely providing the jury with a copy of the statute previously read to them as part of the court's instructions, constitutes a further instruction or a re-instruction "as to the law on responsibility for criminal conduct." The court appears to base its conclusion that it was such a charge or instruction on the assumption that since the judge had previously explained the law to the jury, the jury's request to see the statute necessarily meant that they did not fully understand the court's instruction or desired further explanation of it, or felt it necessary to have the precise language of the statute before them in the course of their deliberations. In Maryland, the jury is the judge of the law, as well as of fact, and because it desires to have with it in the jury room the precise language of the controlling statute does not, in my judgment, transform such a simple request into a jury charge or instruction where the same statute was read to the jury as part of the court's instructions, in appellant's presence, and no exceptions were taken to the instructions as given.

The Maryland cases do not compel the result which the court here reaches. In *Duffy v. State,* 151 Md. 456, the jury specifically requested further instruction as to the form of the verdict; and while the court gave the same instructions that it had originally given in its charge, nowhere in the opinion is the sub-

stance of the court's instruction set out. The court there noted that it "appears that the jury did not understand the instructions given in his [defendant's] presence, or they would not have asked for further instructions"; that "Since the jury did not understand the instructions as first given, it may have been that the prisoner, if present when they were instructed a second time, would have asked that they be made clearer, or he may have objected to their form." *Duffy* then is factually inapposite to the circumstances of this case.

In *Brown v. State, supra,* the court, in the course of its conclusion that the accused has no right to be present when instructions to the jury are being considered by the judge and counsel for the parties in chambers, quoted with approval from *Snyder v. Massachusetts,* 291 U. S. 97, to the effect that the presence of the defendant, as a prerequisite of due process, goes only "to the extent that a fair and just hearing would be thwarted by his absence"; that the law "is sedulous in maintaining for a defendant charged with crime whatever forms of procedure are of the essence of an opportunity to defend"; and that "The concept of fairness must not be strained till it is narrowed to a filament." These statements in *Snyder* were made against this background: The defendant alleged a denial of due process by reason of the fact that the court denied his request to be present when a "view" of the scene of the crime was taken by the jury. The jurors, bailiffs, court stenographer, the judge, the District Attorney and the counsel for the defendant, went to the scene of the crime, and the District Attorney pointed out to the jurors, with considerable particularity, the parts of the building that he wished them to see and defense counsel did likewise. The jury was told to make note of the layout of the streets and there was much discussion in the jury's presence with respect to the physical facts of the area. In his charge to the jury, the judge stated that the "view" comprised part of the evidence before the jury. In holding that appellant has no constitutional right to be present at the "view", the court stated that such right is available, as a matter of due process of law, only when the accused's presence "has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge" (pp. 105-106) ; that the right of presence "may

fairly be assumed to bear, a relation, reasonably substantial, to his opportunity to defend" (p. 106); and that the Fourteenth Amendment does not assure the privilege of presence "when presence would be useless, or the benefit but a shadow" (pp. 106-107).

In *Midgett,* after the jury had retired to deliberate, it asked the court two questions concerning the form of its verdict, the defendant then being involuntarily absent. The court, without returning the jury to the box, and bringing the defendant back into court, sent the answers to the questions into the jury room.

In *Young,* the jury sent a note to the judge asking "Is wielding a deadly weapon in an assault and battery case considered an intention to kill." While the jury was returned to the box to receive the court's answer, neither the defendant nor his counsel were present and it was against this compelling background that we stated at p. 390 that "Intercourse between the judge and the jury as to the facts, the law, or the form of verdict would necessarily be a charge or instruction.

None of the cases relied upon by the court in my judgment provide authority for its holding that merely sending a copy of the statute to the jury, under the circumstances of this case, constituted a reinstruction or further jury charge. I am furthermore of the view that the trial judge under Maryland Rule 558, applicable in criminal cases by reason of Rule 757, has discretion to permit the jury "upon retiring for deliberation" to take with them into the jury room "such of the pleadings, granted prayers or written instructions * * * as the court may deem necessary for a proper consideration of the case." I think the trial judge was empowered by this Rule to send a copy of Article 59, Section 9(a) to the jury whether or not requested by them, as it was, in effect, one of the instructions previously given in the case to the jury, to which no exception had been taken. I think that in exercising his discretion under this Rule, the judge's action would not constitute a "stage of the trial" or a reinstruction under *Young,* requiring the presence of the appellant as a matter of law.

The court states in its opinion that even if the submission to the jury of the copy of the statute was not an instruction but only a mere "communication", there was still reversible error

under *Midgett* and *Young* because the record does not affirmatively show that such communication was not prejudicial or had no tendency to influence the verdict of the jury. I believe the very provisions of the statute upon which appellant was relying to establish his claim of insanity could in no event be considered prejudicial to his case, and I also believe that mere submission of the statute to the jury, under the circumstances of this case, had no tendency "to influence the verdict of the jury" in the sense that that phrase was intended to be applied in *Midgett* and *Young*.

I would therefore affirm the judgments of the lower court.