## STATE OF MARYLAND *v.* SAUL

[No. 335, September Term, 1969.]

*Decided May 7, 1970.*

The cause was argued before McWilliams, Singley, Smith and Digges, JJ., and Ridgely P. Melvin, Jr., Associate Judge of the Fifth Judicial Circuit, specially assigned.

*John J. Garrity, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Edward F. Borgerding, Assistant Attorney General,* and *Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* on the brief, for appellant.

*Howard E. Goldman,* with whom were *Barry Silber* and *Melbourne & Goldman* on the brief, for appellee.

McWilliams, J., delivered the opinion of the Court. Melvin, J., concurs in part and dissents in part. Opinion concurring in part and dissenting in part at page 108 *infra.*

In May 1968 the appellee (Saul) was convicted of murder, abduction and assault with intent to rape. The Court of Special Appeals, two judges dissenting, reversed the convictions and remanded the cases to the Circuit Court for Prince George's County for a new trial. *Saul v. State,* 6 Md. App. 540 (1969). We granted the State's application for the writ of certiorari on 2 December 1969.

Saul filed pleas of not guilty and not guilty by reason of insanity at the time of the commission of the crimes for which he was indicted. His trial generated a transcript of nearly 500 pages, well over half of which is given over to the testimony of five psychiatrists and a clinical psychologist. When the evidence was concluded

the court, Powers and Loveless, JJ., instructed the jury. The instructions take up 12 pages of the transcript. We have set out below only the part thereof which is our present concern:

"A question in this case has been raised, and there has been considerable testimony concerning the mental capacity of the defendant.

"Under Article 59, Section 9 of the Code of Public Laws of the State of Maryland, [A] *defendant is not responsible for criminal conduct and shall be found insane at the time of the commission of the alleged crime if, at the time of such conduct, as a result of mental disease or defect he lack[s]ed substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.* Then it goes on to say that [A]*s used in this section the terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct.* In other words, it is not to be considered a mental disease or defect if the only manifestation is by repeated criminal or antisocial conduct.

"Now, the language in this statute is very important and should be borne in mind by you very carefully. The first consideration on the matter of mental capacity, in other words, whether he should be held responsible for his conduct, is whether or not there was a mental disease or defect. If you conclude from the testimony that there was no mental disease or defect then a necessary element of this defense would be lacking and it would not be proper to find the defendant not guilty by reason of insanity on that alone. There must not only be a mental disease or defect, as distinguished from an abnormality or personality trait or characteristic which fell short of a mental disease or defect, but there

first must be found to be a mental disease or defect, and then if you are convinced beyond a reasonable doubt that there was a mental disease or defect, then—no, you must be convinced beyond a reasonable doubt that there was not a mental disease or defect, and unless you are convinced beyond a reasonable doubt that there was not a mental disease or defect then you would be justified in concluding that there was. Then you next go on to the question of whether such mental disease or defect caused him to lack substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law.

"So that there will be no misunderstanding, I will repeat that the burden is on the State to convince you beyond a reasonable doubt, in addition to the matter of the offenses with which he is charged, but also that he had the mental capacity. And you must be convinced beyond a reasonable doubt that there was not a mental defect or disease which resulted in his lacking substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law." (The language of the statute has been italicized.)

What happened thereafter has been described by Orth, J., who delivered the opinion of the Court of Special Appeals:

"* * * After the charge to the jury, the State and defense counsel presented closing arguments. The jury retired for their deliberations at 3:04 P.M., returned to the courtroom at 9:27 P.M. and rendered their verdicts. There is in the record by stipulation that while the jury were deliberating they sent a note to the court, signed by the foreman, reading, 'May the jury have legal code Article 59 section 9.' Counsel for

the State and the appellant [Saul] were called to the chambers of one of the two judges presiding at the trial. The other presiding judge was not present. Counsel examined the note, considered the request, and agreed that a photostatic copy of Art. 59, § 9 (a) could be sent to the jury. It was delivered to the jury by the bailiff. Court did not re-convene and the jury did not return to the courtroom. The appellant [Saul] was at no time present when the note was delivered to the judge, when the request was being considered by the judge and counsel or when the copy of the statute was delivered to the jury, as he was 'detained at the time in a lock-up portion of the sheriff's office located in the court house.' " *Id.* at 545.

The Court of Special Appeals held that the *delivery* of the note from the jury to the judge was merely a "communication" and that its reception by the judge, the conference with counsel and the agreement to give a copy of the statute to the jury did not amount to a part of the trial. Judge Orth, for the court, relying principally on *Young v. State,* 5 Md. App. 383 (1968), said that the "communication to the jury was clearly as to the law on responsibility for criminal conduct and thus was an instruction." *Id.* at 546. He went on to say that when "the judge reached his conclusion and was about to deliver the copy of the statute to the jury the trial was resumed and * * * [Saul] had the absolute right to be present." *Id.*

The State argues that *Young* cannot be relied upon because our earlier decisions, principally *Midgett v. State,* 216 Md. 26 (1958), were misconstrued. We think not. Young was charged with assault with intent "to kill and murder" and assault and battery. After the jury had begun its deliberations the foreman sent a note to the trial judge which read, "Is wielding a deadly weapon in an assault and battery case considered an intention to kill?"

The jury was brought back and given additional instructions. Neither Young nor his attorney was present in the courtroom at the time. Some hours later the jury returned a verdict of guilty on the assault and battery charge. Counsel for Young did not learn of the incident until the day after the conclusion of the trial.

In *Midgett*, Judge Horney, for the Court, said:

> "In this State there is no doubt that an accused in a criminal prosecution for a felony has the absolute right to be present at every stage of his trial from the time the jury is impanelled until it reaches a verdict or is discharged, and there can be no valid trial or judgment unless he has been afforded that right. The constitutional guarantee includes the right of the accused to be present (i) when the jury is charged or instructed on the facts, the law or the form of the verdict, before it has begun its deliberations or afterwards upon its request or by direction of the court; (ii) when the court is repeating a charge or instruction previously given in whole or in part; (iii) when the court communicates with the jury in answer to questions propounded by the jury, or (iv) when there shall be any communication whatsoever between the court and the jury; *unless* the record affirmatively shows that such communications were not prejudicial or had no tendency to influence the verdict of the jury. Furthermore, the right to be present is personal to the accused and cannot be waived by his counsel. *Duffy v. State,* 151 Md. 456, 135 A. 189 (1926) ; *La Guardia v. State,* 190 Md. 450, 58 A. 2d 913 (1948) ; Constitution of Maryland, Declaration of Rights, Art. 5." *Id.* at 36-37.

In his able and comprehensive opinion, Judge Orth, in *Young,* paraphrased what was said in *Midgett*:

> "We think that the Court distinguished between

'instruction or charge' on the one hand and 'communication' with the jury on the other hand. Intercourse between the judge and the jury as to the facts, the law or the form of verdict would necessarily be a 'charge or instruction' and intercourse between the judge and jury as to matters other than those would be a 'communication.' So when the judge 'communicates with the jury in answer to questions propounded by them,' it may be a 'charge or instruction' or merely a 'communication' depending on the subject matter. Since the instruction or charge of the jury is a part of the trial, as we have stated *supra,* the accused has the absolute right to be present when a charge or instruction is given. But a mere 'communication' by the judge to the jury is not a part of the trial and the accused is not entitled to be present as a matter of right. But even then there is reversible error 'unless the record affirmatively shows that such communications were not prejudicial or had no tendency to influence the verdict of the jury.' As we construe *Midgett* the rule is as follows:

"(1) it is reversible error for the court to charge or instruct the jury trying the case, on the facts, the law or the form of the verdict at any time during the involuntary absence of the defendant [but see Maryland Rule 775], even though the charge or instruction is a repetition of a charge or instruction previously given in whole or in part, prejudice being conclusively presumed; and

(2) it is reversible error for the court to communicate in any other manner with the jury trying the case, during the involuntary absence of the defendant unless the record affirmatively shows that such communication was not prejudicial or had no tendency to influence the verdict of the jury." *Id.* at 390-91.

The State insists that the following clause (from *Midgett*), "unless the record affirmatively shows that such communications were not prejudicial or had no tendency to influence the verdict of the jury," which obviously applies to conditions (iii) and (iv), applies as well to conditions (i) and (ii). We are not persuaded that this is so. It seems to us quite clear that the expression "such communications" relates to the "communications" mentioned in (iii) and (iv) and not to the *charge* or *instruction,* or the repetition of the *charge* or *instruction* mentioned in (i) and (ii). It would seem to follow, therefore, that Judge Orth's reading of *Midgett* is correct. Here, of course, there is also the question whether there was a *repetition* of an instruction or a *reinstruction.* If it was, in fact, the latter, then the violation of the constitutional guarantee would be more pronounced. Although, as we see it, a holding in this narrow regard is not required of us, we think, in the circumstances, that what the trial judge did was really more a *reinstruction* than a *repetition.* To revert for a moment to the second paragraph of this opinion, it will be observed that the court did not purport to quote from the statute. One's first impression is that the court was paraphrasing the statute. Only after a careful word by word comparison does it become clear that there is incorporated in the instruction substantially the words of the statute. A tense was changed and after the opening sentence of the paragraph there is a parenthetical remark. The paragraph concludes with a paraphrastic comment. The court then went into the mechanics of applying the statute. In the circumstances it is quite understandable that the jury may have been sufficiently uncertain about the impact of the statute to want to examine its precise terms. Giving them a transcript of it was a *reinstruction* and since this was done during Saul's involuntary absence there arises a conclusive presumption of prejudice.

Neither do we agree with the State's suggestion that the distinction made in *Young* is inconsistent with our earlier decisions in *La Guardia v. State,* 190 Md. 450

(1948), and *Duffy v. State,* 151 Md. 456 (1926). We think Judge Orth's analysis, in *Young,* of those cases is sound. In this regard we find support in the decisions of a number of other jurisdictions. *See* the annotations in 94 A.L.R.2d 270 (1964), 41 A.L.R.2d 227 (1955), and 96 A.L.R. 899 (1935); 23 C.J.S., *Criminal Law* §§ 973-74 (1961); and 21 Am.Jur.2d, *Criminal Law* §§ 271, 277, 299 (1965). *See also* A.B.A. Project on Minimum Standards for Criminal Justice, *Trial by Jury* § 5.3 (Approved Draft 1968).

Since we hold that the giving of a transcript of the statute, in these circumstances, was either a reinstruction or a repetition of a charge or instruction it is unnecessary for us to consider the State's second contention that being a mere "communication" it was not prejudicial and did not tend to influence the verdict of the jury. In any event, we fail to see where the record "affirmatively shows" an absence of prejudice or a tendency to influence the verdict of the jury and, as was said in *La Guardia,* "* * * if the record shows error by such communication, but does not show whether or not the error was prejudicial, it is presumed to be prejudicial and requires a reversal." *Id.* at 458.

The judgment of the Court of Special Appeals is affirmed.

*Judgment affirmed.*

MELVIN, J., concurring in part and dissenting in part:

For the reasons stated by Chief Judge Murphy of the Court of Special Appeals in his dissenting opinion reported in *Saul v. State,* 6 Md.App., pp. 551-555, I respectfully dissent from the holding of the majority that the lower court committed reversible error when, in defendant's involuntary absence, it complied with the request of the jury for a copy of the provisions of Maryland Code, Article 59, Section 9 (a). Chief Judge Murphy at page 554 of his dissent said:

> "None of the cases relied upon by the court
> in my judgment provide authority for its hold-

ing that merely sending a copy of the statute to the jury, *under the circumstances of this case,* constituted a reinstruction or further jury charge. I am furthermore of the view that the trial judge under Maryland Rule 558, applicable in criminal cases by reason of Rule 757, has discretion to permit the jury 'upon retiring for deliberation' to take with them into the jury room 'such of the pleadings, granted prayers or written instructions * * * as the court may deem necessary for a proper consideration of the case.' I think the trial judge was empowered by this Rule to send a copy of Article 59, Section 9 (a) to the jury whether or not requested by them, as it was, in effect, one of the instructions previously given in the case to the jury, to which no exception had been taken. I think that in exercising his discretion under this Rule, the judge's action would not constitute a 'stage of the trial' or a reinstruction under *Young,* requiring the presence of the appellant as a matter of law.

"The court states in its opinion that even if the submission to the jury of the copy of the statute was not an instruction but only a mere 'communication', there was still reversible error under *Midgett* and *Young* because the record does not affirmatively show that such communication was not prejudicial or had no tendency to influence the verdict of the jury. I believe the very provisions of the statute upon which appellant was relying to establish his claim of insanity could in no event be considered prejudicial to his case, and I also believe that mere submission of the statute to the jury, *under the circumstances of this case,* had no tendency 'to influence the verdict of the jury' in the sense that that phrase was intended to be applied in *Midgett* and *Young.*" (Emphasis added.)

However, I concur with the result reached by the ma-

110

jority, i.e., that the judgment of the Court of Special Appeals be affirmed. In my opinion the failure of the trial court to "direct the jury to render a special verdict on the sanity of the defendant at the time of the alleged crime" as required by Maryland Code, Article 59, Section 9 (b), was reversible error. For this reason alone I would affirm the judgment of the Court of Special Appeals remanding the cases for a new trial.