505 A.2d 913

**Katherine L. WILSON, et al.**

v.

**Bruce Lee JACKSON, Sr., et al.**

**No. 884, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

March 12, 1986.

Richard W. Douglas (Meyers & Young, P.A. on brief, Hagerstown, Thomas N. Berry, Cumberland (Walter H. Madden, Rockville, on brief), for appellants.

Allen J. Katz, Gaithersburg, and Joseph M. Mott, Rockville, for appellees.

Argued before GILBERT, C.J., and WILNER and ADKINS, JJ.

GILBERT, Chief Judge.

This appeal from the Circuit Court for Montgomery County presents two questions:

1. Must the plaintiff prove "actual malice" in order to hold a police officer liable for damages if the action is grounded on 42 U.S.C. § 1983?

2. Was it error for the trial court to permit a doctor of social science to testify to the characteristics of post-traumatic stress disorder?

Before embarking upon a discussion of the applicable law, we shall relate the tragic events from which this litigation arose.

## The Facts

Bruce L. Jackson, Sr., then a member of the Montgomery County Police Department, was assigned to the Bethesda District Special Assignment Team. During the early morning hours of February 11, 1982, Jackson, in "plainclothes," was going to the Bethesda sub-station. He had been drinking "over a period of four hours." His blood alcohol concentration "was estimated to be approximately 0.11 percent."

By happenstance, Jan Michael Moore was at that time driving a motor vehicle on the same street as Officer Jackson. While stopped for traffic at the intersection of Bradley Boulevard and Wisconsin Avenue in Bethesda, Moore got out of a motor vehicle, walked to the car that was immediately behind Moore's and kicked it. Jackson testified that when he observed that happening, he opened the door to his automobile and yelled to Moore to desist. Moore then returned to his vehicle and drove on to the next traffic signal where he was again required to stop because of the "red light." Officer Jackson halted his car behind Moore's and walked to the Moore vehicle. According to Jackson, he did not intend to arrest or cite Moore but to "calm the situation." Jackson said that as he neared the left rear fender of Moore's automobile, Moore started to

alight from the vehicle. Jackson related to the jury that when Moore "started to exit the vehicle," Jackson noticed a "large shiny ... knife" in Moore's hand. "Feeling," he said, that his "life was in jeopardy," he forgot about reaching for his "I.D." but instead drew his weapon. Jackson stated that he advised Moore that he, Jackson, was a police officer and that Moore was under arrest.

Instead of surrendering to Jackson, Moore, who never got completely out of his car, attempted to retreat. Jackson explained that when Moore tried to close the door of Moore's car, Jackson "turned to grab the door handle" with "my left hand." At the same time, he attempted to "grab the window glass with ... [his] right hand." As the car moved forward, the gun, which was in Jackson's right hand, discharged. The bullet, we were told on oral argument, entered the left shoulder and in a downward, angular motion passed through the heart. Moore slumped forward and his car continued, unguided, along Wisconsin Avenue.

After the shooting, Jackson pursued the car which Moore, although mortally wounded, apparently continued to operate. Jackson testified that he "lost sight" of Moore's vehicle but did observe what he "assumed to be an accident." Nevertheless, instead of proceeding to the scene of that accident, he turned off Wisconsin Avenue. Jackson was unable to say why he did not pursue Moore or investigate the accident in which Moore, then apparently dead, was involved. Jackson did tell the jury that he did not intend to shoot Moore or to discharge the weapon.

Moore's personal representatives sued Jackson and his employer, Montgomery County, alleging that:

1) Jackson, while acting in his official capacity on behalf of the Montgomery County Police Department, "willfully, maliciously, and intentionally assaulted [Moore]";

2) the unlawful and malicious acts committed by Jackson, while acting under color of authority as a Montgomery County police officer, constituted a violation of rights guaranteed Moore under the First, Fourth, Fifth, Eighth, and

Fourteenth Amendments to the United States Constitution and of 42 U.S.C. § 1983; and

3) Jackson breached "[his] duty as an individual and a police officer to exercise due care in the execution of his powers as a police officer and in the use and discharge of a firearm."

Jackson and the county asserted that the plaintiffs' action against them was barred by various immunities, specifically those applicable to public officials and governmental functions.

At the close of the evidence, the trial judge granted the county's motion for judgment on all counts. The case against Jackson went to the jury.

Over the objection of the plaintiffs' counsel, the trial judge instructed the jury:

"As a police officer ... [Jackson] enjoys what is called a qualified immunity for his actions. That is his actions that are committed or performed in his capacity as a police officer.

So that—the law is in this State, that Officer Jackson is free of liability for any acts that he may have committed, unless you find that he acted with malice in injuring Jan Michael Moore, or in killing him.

Now, malice as the term is defined, and as we mean it, in this sense, means the intentional, or willful doing of a wrongful act. The act must have been done without legal justification, or excuse.

In order to find malice, you must find more than an error in judgment. You must find that Jackson acted knowingly, or deliberately, for an improper motive, and without legal justification."

From a judgment entered on a verdict in favor of Jackson, the appellants, in this Court, contend that the trial court erred in its jury instructions and in permitting certain "expert" evidence. The first error, according to appellants, occurred when the judge told the jury that "Jackson was protected by public official immunity and that a verdict

must be in his favor unless the jury found that Jackson acted with actual malice toward" Moore. The second error that appellants perceive is that the judge permitted a doctor of social science to testify as an expert on the symptoms of "post-traumatic stress disorder."

### Public Official Immunity

■ Maryland governmental immunity extends to the tortious acts of public servants when:

"1) the public servant is a 'public official';

2) the alleged culpable conduct is committed by him while acting in a discretionary capacity; and

3) the official acted without *actual* malice."

*Leese v. Baltimore County,* 64 Md.App. 442, 479, 497 A.2d 159, 178 (1985) (emphasis supplied). Gilbert, *Maryland Tort Law Handbook* § 2.10 (1985).

Judge Adkins, writing for this Court in *Leese,* said with regard to the third element that "[t]he actual malice needed to defeat official immunity requires 'an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and wilfully injure the plaintiff.'" *Leese,* 64 Md.App. at 480, 497 A.2d at 179 (citations omitted).

*Leese* makes clear that with respect to the common law counts, the trial court was correct in its instructions inasmuch as no actual malice was demonstrated.

### Immunity Under 42 U.S.C. § 1983

The appellants' § 1983 claim against Jackson presents a wholly different standard because State immunity defenses may not be asserted in response to federal civil rights claims. *Martinez v. California,* 444 U.S. 277, 284, 100 S.Ct. 553, 558, 62 L.Ed.2d 481, 488, *reh'g denied,* 445 U.S. 920, 100 S.Ct. 1285, 63 L.Ed.2d 606 (1980). *See Leese,* 64 Md.App. at 481, 497 A.2d at 179. The Supreme Court has said:

" '[C]onduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 or § 1985(3) cannot be immunized by state law. A construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the constitution insures that the proper construction may be enforced.... ' "

*Martinez v. California*, 444 U.S. at 284 n. 8, 100 S.Ct. at 558 n. 8, 62 L.Ed.2d at 488 n. 8, *reh'g denied*, 445 U.S. 920, 100 S.Ct. 1285, 63 L.Ed.2d 606, *citing*, *Hampton v. Chicago*, 484 F.2d 602, 607 (7th Cir.1973), *cert. denied*, 415 U.S. 917, 94 S.Ct. 1413, 39 L.Ed.2d 471 (1974).

■ *Martinez*, indubitably, precludes Jackson from asserting the State law immunity defense to the § 1983 civil rights violation charged in count II of the appellants' declaration.[1]

Nevertheless, because Jackson was, at the time of the shooting, a police officer in the performance of his duty, he is entitled to a qualified immunity which protects him from liability for official acts performed in "good faith." *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *see also Nixon v. Fitzgerald*, 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982).

"Qualified or 'good faith' immunity is an affirmative defense that ... has both an 'objective' and a 'subjective' aspect. The objective element involves a presumptive knowledge of and respect for 'basic, unquestioned constitutional rights.' The subjective component refers to 'permissible intentions.' Characteristically the Court has defined these elements by identifying the circumstances in which qualified immunity would *not* be available. Referring both to the objective and subjective elements, we have held that qualified immunity would be defeated if an

---

**1.** Since this action was filed, the title given to the initial pleading has changed from declaration or bill of complaint to "complaint." Md. Rule 2–101.

official *'knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action *with the malicious intention* to cause a deprivation of constitutional rights or other injury ....' "

*Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396, 408–409 (1982) (emphasis in original) (citations omitted).

The focus with regard to a "knowing violation" of a constitutional right is whether "the law existing at the time of the alleged violation proscribed what occurred." *Leese,* 64 Md.App. at 483–484, 497 A.2d at 180. To decide whether there was a "knowing violation" of a constitutional right in the case at bar, the fact finder must determine:

1. Whether Jackson used more force than was reasonable or necessary under attendant circumstances to effect the arrest;

2. Whether Jackson knew or should have known that his actions exceeded his legal authority and would result in the deprivation of Moore's constitutional rights.

An affirmative answer to both questions defeats a claim of immunity from the ambit of § 1983.

Notwithstanding a negative answer by the fact finder to both of the above questions, immunity from § 1983 may still be extinguished if the jury finds that Jackson "took the action with the *malicious intention* to cause a deprivation of constitutional rights or other injury ...." *Harlow,* 457 U.S. at 815, 102 S.Ct. at 2736, 73 L.Ed.2d at 408–409 (emphasis in original).

The standard of malice required to prove a claim under § 1983, unlike the standard of malice needed to establish a claim under Maryland law, "can be satisfied by *either* actual malice *or* its legal equivalent." *Leese,* 64 Md.App. at 484, 497 A.2d at 181 (emphasis supplied). "The latter includes a reckless disregard for the injured party's rights." *Leese,* 64 Md.App. at 484, 497 A.2d at 181, *citing Procunier*

*v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978).

■ The trial judge erred when he instructed the jury that Jackson was immune from liability under § 1983, unless the jury found that he acted "knowingly, or deliberately, for an improper motive, and without legal justification." The instruction was deficient in its breadth in that it was confined to the common law and did not cover the law with respect to § 1983 civil rights violations. We, therefore, shall reverse the judgment as to the alleged § 1983 violation and remand for a new trial on that count.

### Expert Testimony

■ Ordinarily we would close our opinion at this point, but because this case may be retried, we deem it advisable to comment on the use of the expert witness's testimony.

The appellants aver that the trial judge erred when he allowed a. doctor in clinical social work to testify to the characteristics °of post-traumatic stress disorder. Appellants maintain that the doctor's testimony, coupled with defense counsel's argument that Jackson exhibited the symptoms associated with post-traumatic stress disorder, "accomplished indirectly what would have been impermissible directly, that is, a diagnosis of the mental condition of ... [Jackson] rendered by a non-medical person."

To bolster their position, the appellants rely on *Saul v. State,* 6 Md.App. 540, 252 A.2d 282 (1969), *aff'd,* 258 Md. 100, 265 A.2d 178 (1970). There we held that "an opinion as to ultimate fact, whether or not the accused ... [suffers from a 'mental disease or defect'] ... must be made by a medically trained psychiatrist in order to be admissible in evidence." *Saul,* 6 Md.App. at 549–550, 252 A.2d at 286–287, *aff'd* 258 Md. 100, 265 A.2d 178.

*Saul* is of little support to appellants inasmuch as it is abundantly clear from the record extract in the instant case that the doctor was stopped far short of expressing an

opinion as to whether Jackson suffered from post-traumatic stress disorder. The expert merely testified as to the symptoms commonly associated with post-traumatic stress disorder. He did not say that Jackson exhibited the symptoms or that Jackson suffered from the stress disorder. That defense counsel argued to the jury that Jackson manifested the symptoms described by the witness is of no consequence. It has been said so often by so many courts as not to require citation to authority that argument of counsel is not evidence. Merely because defense counsel may have skillfully woven the threads of the witness's testimony into the tapestry of a jury argument is not error. The expert's testimony was admissible.

### The Appeal as to Montgomery County

There remains one procedural matter of which we must dispose. Appellants joined Montgomery County as an appellee, but the appellants' brief contains no argument whatsoever that the trial court erred with respect to its disposition of the claim against the county.

Under Md. Rule 1031, "[i]t is the appellants' primary obligation ... to pinpoint the errors raised on appeal and to support their contentions with well-reasoned legal argument." *Federal Land Bank of Baltimore, Inc. v. Esham,* 43 Md.App. 446, 458, 406 A.2d 928, 936 (1979); *see* Md.Rule 1031 c 2 and 5. The county, invoking that rule, has moved to dismiss the appeal as to it. The appellants on oral argument interposed no objection to that motion. Accordingly, we dismiss the appeal as to Montgomery County.

APPEAL DISMISSED AS TO MONTGOMERY COUNTY JUDGMENTS AFFIRMED AS TO COUNTS I AND III. JUDGMENT ON COUNT II, REVERSED. CASE REMANDED FOR A NEW TRIAL ON THAT COUNT. COSTS TO BE DIVIDED EQUALLY BETWEEN APPELLANTS AND APPELLEE JACKSON.