**Paul F. HIDDEN, Appellant,**

v.

**The MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, a body corporate of the State of New York, Appellee.**

**No. 6886.**

United States Court of Appeals, Fourth Circuit.

Argued Nov. 11, 1954.

Decided Dec. 13, 1954.

Daniel B. Leonard, Baltimore, Md. (George M. Berry, Towson, Md., and

Bowie, Burke & Leonard, Baltimore, Md., on the brief), for appellant.

William A. Fisher, Jr., and William D. Macmillan, Baltimore, Md. (Semmes, Bowen & Semmes, Baltimore, Md., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This suit was brought under the total and permanent disability clauses of two policies of life insurance issued by the Mutual Life Insurance Company of New York in 1924 and 1927 respectively, on the life of Paul F. Hidden, the plaintiff in the District Court. The contracts provided that if the insured before attaining the age of 60 years should furnish proof that he had become totally and permanently disabled by bodily injury or disease, so that he was permanently, continuously and wholly prevented from performing any work for compensation, gain or profit, or from following any gainful occupation, the Company would waive the payment of premiums and pay him the sum of $100 per month under one policy, and the sum of $150 per month under the other policy during the continuance of the disability. The suit was brought in the Circuit Court of Baltimore County, Maryland, in January, 1953 and removed to the court below on the petition of the Insurance Company on the ground of diversity of citizenship. The insured claims that in March, 1942, while the policies were in effect, he became totally and permanently disabled within the meaning of the policy; and that he offered proof thereof to the Company in March, 1949, before he became 60 years of age, whereupon the Company became liable to pay him the sum of $4600 for disability benefits, and the further sum of $1232.40 in the return of premiums paid after the disability began, under one policy, and the sum of $19,650 for disability benefits, and in addition the sum of $5,248.50 for the return of premiums under the other policy, or in all the sum of $30,730.90.

Proof on behalf of the insured tended to show the following facts: In 1924, when the first policy was issued, the assured was the sole owner of a business of hauling dirt and building materials in automobile trucks. The business greatly increased in volume during the years 1924 to 1941; but during this period the insured was continually harassed by problems and worries which proved too much for him so that in 1941 he decided to liquidate the business and retire. He estimated that at that time the business was worth $85,000. During all the subsequent time he has done no work and has earned no money except for a short period from 1949 to 1951 when he took some part in running a pool room, together with his two sons, but gave it up and retired, when he found that it disturbed him. After 1941 he was engaged mostly in working in his garden and in fishing or hunting in season.

On March 18, 1949, when he was under 60 years of age, he filed a claim under the disability provisions of the policies because of a disabling nervous condition which has continued until the present time. Shortly after the claim was filed he was examined by a doctor selected by the Company and was investigated by representatives of the Company who observed his activities. Upon the reports received from these persons the Company rejected the claim on June 7, 1949. In the meantime, from 1941 to 1952, the insured continued to pay the annual premiums aggregating $843.43. In 1952 he consulted an attorney and thereafter instituted the present suit in January, 1953.

An important part of the evidence consisted of testimony of physicians who were expert in the field of psychiatry and neurology. Two physicians testified on behalf of the insured. Each said that in his opinion the insured was permanently and totally disabled at the time of the examination in 1952, and had been in this condition for several years prior to the examination. One of these physicians diagnosed the insured's disability as psychoneurosis with a depression, and

the other testified that the insured was suffering from an anxiety neurosis growing out of an unconscious feeling of guilt. Both of them referred to an automobile accident in which the insured had become involved and which resulted in the death of another person.

On the other hand the psychiatrist who examined the insured on behalf of the Company in 1949, and described himself as an expert on diseases of the nervous system, testified that the insured was a pretty healthy man for his age, which at that time was 58, and that with the exception of general nervousness and some slight depression, the insured was perfectly normal for his age and that from both a physical and a neurological and mental standpoint, he was perfectly capable of doing any kind of work that a man of his age should do.

A fourth expert was offered as a witness on behalf of the insured who was not a physician but a doctor of philosophy in clinical psychology. He had had experience in that field in army hospitals and at the time of the trial was engaged in private practice and also chief psychologist in Springfield State Hospital, an institution of the State of Maryland for the treatment of mental diseases. He testified that in his practice patients are referred to him by psychiatrists, so that the patients may be subjected to a battery of psychological objective tests in order to determine and diagnose their personal problems and their emotional and nervous condition without asking the patients personal questions about themselves. He said that those tests are well established in the profession and have been usd for many years in the army, in private practice and in state and federal institutions. One of the psychiatrists who testified for the insured said that in forming his opinion he depended in part upon the objective tests made by the clinical psychologist.

The psychologist examined the insured in 1952 and subjected him to certain of these tests, including the finger-drawing test, the Rohrschact or ink blot test, and the picture tests, and he testified that he was able to express an opinion as to the condition of the insured not only at the time of the examination but also in 1949. Upon objection, the testimony of this witness was excluded on the ground that he was not qualified as an expert, and an offer to show that in his opinion the insured is totally and permanently disabled, and was in this condition in 1949, was rejected.

The case was submitted to a jury which found for the defendant. On this appeal it is urged that the judgment should be reversed on the grounds (1) that the plaintiff was prejudiced by the participation of the judge in the examination of witnesses during the trial; (2) that the charge of the court on the meaning of the term "total disability" was erroneous; and (3) that the testimony of the psychologist was erroneously excluded.

Little need be said on the first two points. We have examined the record and we find nothing in the participation of the judge during the trial which was not entirely within the province of a trial judge in the federal Court. See Simon v. United States, 4 Cir., 123 F.2d 80, 83. Nor do we find that the charge on the subject of total disability requires a reversal. The plaintiff's attorney took no exception to the charge in this respect, although offered an opportunity by the judge to do so. The point now stressed is that the judge, in referring to the Maryland rule that the insurance policies did not insure against the inability of the insured to pursue a particular occupation, illustrated his meaning by suggesting that a man unable to carry on his usual occupation might be able to act as messenger and earn from $1500 to $2000 per year. In Travelers Ins. Co. v. Berlin, 185 Md. 404, 414, 45 A.2d 90, the court considered the disability claim set up in 1944 by a policy holder who had been a general clerk and stenographer in 1917, and subsequently a furniture manufacturer from 1925 to 1931 when he became totally disabled and went to a sanitarium. The court held that the question whether the insured could perform the duties of a furniture

manufacturer or a clerk at the time of the trial was for the jury, and laid down the rule "that a statement of helplessness is not a prerequisite to recovery, but on the contrary that the disability need only be such as to render the claimant unable to perform the substantial and material acts of his own or some other business or occupation in the usual or customary way. The disability clause does not insure against inability to pursue a particular occupation; if there is any other occupation open to the insured for which he may be fitted by education, training or experience and which, yielding a reasonably substantial gain or profit, rises to the dignity of an income or livelihood, recovery may be defeated."

The District Judge instructed the jury in substantially the language of the Maryland court; and we are not prepared to say that his allusion to the earnings of a messenger was inappropriate to the discussion of the disability claim of the plaintiff who in early life had conducted a trucking business and later had assisted in running a pool room. In any event, no objection was taken to the judge's charge on the point and a party may not secure a reversal of a judgment by withholding his objection to a charge at the time of its delivery and thereby deprive the judge of the opportunity of modifying his language if he finds it proper to do so. See Rule 51 of the Federal Rules of Civil Procedure, 28 U. S.C.A.

We think, however, that the objection to the ruling on the admissibility of the testimony of the psychologist is well taken. The uncontradicted evidence received at the trial tended to show that the expert was qualified in his field by academic training and by experience; and also that the objective tests which he described, although perhaps not well known to the general public, were recognized as helpful by medical experts in psychiatry. Moreover, one of the psychiatrists, whose testimony was received, based his opinion as to the condition of the insured in part upon the objective tests given by the psychologist to the insured in this case. Accordingly it is our view that the evidence should have been received, and we are unable to say that its exclusion was harmless since the expert testimony played so large a part in the trial of the case.

Reversed and remanded.