222 So.2d 487 (1969)
John A. REESE, Appellant,
v.
Pearl NAYLOR, a Minor, by Her Next Friend and Mother, Josephine Naylor and Paul E. Naylor, a Minor by His Next Friend and Mother, Josephine Naylor, and Josephine Naylor, Appellees.
No. K-459.
District Court of Appeal of Florida. First District.
May 20, 1969.
Rehearing Denied June 3, 1969.
*488 Beggs, Lane, Daniel, Gaines & Davis, Pensacola, for appellant.
Levin, Askew, Warfield, Graff & Mabie, Pensacola, for appellees.
SPECTOR, Justice.
The defendant seeks review of an adverse judgment entered pursuant to a jury verdict in a personal injuries action arising from an automobile accident.
The evidence given at the trial when regarded in the light most favorable to the prevailing party below, as it must be, shows that the appellant while proceeding on a rather heavily trafficked highway ran into the rear end of a compact automobile driven by Mrs. Josephine Naylor. At the time, her 17-year-old twin children, Pearl and Paul, were passengers in the car. All three received personal injuries as a result of the collision. Mrs. Naylor was awaiting passage of oncoming traffic so that she could make a left turn onto a dirt road leading to a local teenage club.
There was evidence from two drivers who had been proceeding in back of the Naylor car but in front of the appellant Reese's car. These drivers testified they saw that Mrs. Naylor was stopping up ahead preparatory to making the left turn and that at the time the appellant pulled around to pass them, they heard the sound of his car as it went by and observed to themselves, so they testified, that the appellant was going to hit the Naylor car which they said had already gone into a partial turn.
There was also ample evidence from which the jury could have found that the defendant was quite drunk. The defendant himself admitted that while at the officer's club he had consumed some six screwdrivers, a beverage concocted from gin and orange juice. Testimony from investigating officers was that appellant had passed out in the police car as they worked the accident, which took them some thirty minutes. Mrs. Mary Quinn Oatman, a deputy sheriff who is a specialist in the administering of scientific tests for intoxication, testified that in her opinion, based on her observation of the appellant, he was intoxicated.
For reversal, appellant has raised several questions relating to the evidence on the issue of liability. We have considered *489 appellant's contentions regarding the liability issue and find them to be without merit and not deserving of further discussion.
The last question raised by appellant however does require some discussion. That question as framed by appellant is as follows: "Is a clinical psychologist qualified to give his opinion as to diagnosis, prognosis, and causation of a mental illness?"
The foregoing question arises because Pearl Naylor adduced proof of mental as well as physical injuries. Appellant's contention is that the evidence required to establish such injury can be given only by a medical doctor and plaintiff having called no medical doctor for this purpose has failed to make out a case in support of her claim.
The witness used on this element of damages was Dr. Dan Overlade, a clinical psychologist. Dr. Overlade received his Bachelor's and Master's Degrees from Utah State University and a Doctor of Philosophy Degree in psychology from Purdue University. Thereafter, he served as an assistant professor at the University of Minnesota Institute of Child Welfare for two years. He then served as Director of the Escambia County Guidance Clinic for eight years. After leaving that post, he went into the private practice of clinical psychology and had been thusly engaged for some four years at the time of the trial herein. Dr. Overlade is a member of the American Psychological Association and President of the Florida Psychological Association.
He testified that he administered certain psychological tests to the plaintiff, Pearl Naylor, including the Rorschach, the Wechsler Adult Intelligence Scale, the latter being a screening test for dysphasis and dyspraxia. Upon being asked whether it was within his field to diagnose psychiatric conditions, Dr. Overlade responded that he is frequently called upon by psychiatrists or by neurosurgeons or other physicians to assist in the diagnosis of emotional and behavioral and organic brain disorders. He stated that the aforementioned tests aided in determining the diagnosis and stated that he did make such diagnosis. At this point in Dr. Overlade's testimony, defense counsel objected to the witness' testimony as to his diagnosis on the grounds that it was outside his field of specialty. Following this defense objection, the jury was excluded and further testimony was taken from the witness relating to his qualifications. The witness testified that he is certified as a psychologist under the provisions of Chapter 490, Florida Statutes, F.S.A., and admitted that he is not licensed to practice medicine. In response to defense counsel's further questioning, the witness testified that schizophrenia is both a medical "diagnosis" and a psychological "diagnosis". In response to the defense inquiry as to whether schizophrenia is a mental illness, the witness testified that from psychology's viewpoint it is a mental aberration rather than a disease. He also testified that it is treated by physicians specializing in psychiatry, said treatment being rendered both in and out of hospitals. In response to further questioning by plaintiff's counsel, the witness testified that the diagnosis of such conditions as schizophrenia is common practice with him and that said condition is regularly diagnosed by psychologists throughout the State of Florida. As to whether schizophrenia is a medical or psychological condition, the witness testified that it could be either or both, depending upon one's point of view.
He further testified that psychologists are included in the study, identification, and differentiation and diagnosis of mental disorders because they utilize techniques, tools, and methods that are not utilized as part of the medical or psychiatric approach and that it is for such reason that psychiatrists ask for consultative services of a psychologist so that the latter's special techniques may be utilized in arriving at a diagnostic impression.
*490 In support of defendant's contention that the witness was unqualified, defendant relied on a combination of statutory provisions, viz., Section 458.13, Florida Statutes, and Section 490.021(5), Florida Statutes, F.S.A., Chapter 458 is Florida's Medical Practice Act and therein the practice of medicine is defined as follows:
"458.13 Definition of practice of medicine; limitations, exceptions, etc. 

(1) Any person, except as hereinafter provided, shall be deemed to be practicing medicine within the purview of this chapter, who holds himself out as being able to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition, or who shall offer or undertake, by any means or method, to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition."
The inclusion within the foregoing statutory definition of a diagnosis seems to be the crux of appellant's contention. Moreover, Chapter 490, relating to the certification of psychologists provides in Section 490.021(5) that "Nothing in this Chapter, however, shall be construed as permitting the certified psychologist to practice medicine as defined in the laws of this state." The trial judge rejected the defendant's contention in this regard by pointing to the provisions of Section 490.11, Florida Statutes, F.S.A., which clothe communications between a patient and psychologist with a statutory privilege, said section expressly relating to diagnosis or treatment of the patient's mental condition between patient and psychologist. Thus, it was on the basis of the latter statute that the trial court held it to be consistent with the legislative intent that a psychologist be permitted to testify relating to a diagnosis.
Upon the trial court's ruling that the witness was competent to testify as to diagnosis, the defense noted its continuing objection to that line of questioning asserting as before that the witness was not qualified. We think the trial judge's ruling as to the qualifications of a clinical psychologist to testify as to the mental condition of the plaintiff was not erroneous. It is clear to us that a clinical psychologist once qualified as an expert witness by reason of education, training, and experience is competent to testify as to his diagnosis of a person's mental condition based on the use of the devices and techniques ordinarily resorted to by such practitioners.
While we so hold, we are quick to point out that for the purposes of a negligence action, there may be a difference between the qualifications of an expert witness in the mental health field to testify as to the causal relationship between a trauma and a mental condition in contrast with the giving of evidence as to the nature or extent of such mental condition. In the case at bar, the clinical psychologist, Dr. Overlade, did testify as to causal connection between the accident and Pearl Naylor's condition, stating affirmatively that the two were connected. However, no objection was made at this point in the testimony nor do we feel that the earlier objection which continued went beyond the scope of the testimony as to condition which was then being adduced. In Shea v. State, 167 So.2d 767 (Fla.App. 1964), it was held that where an objection to the admission of evidence is on a particular ground, no new or other ground may be considered by the appellate court. The same principle was adhered to by this court more recently in Wilder v. Van Dorn, 201 So.2d 775. We therefore do not now rule upon the question of the competence of a clinical psychologist to testify as to causal connection in a tort action, the issue not having been properly preserved.
As to the competence of the clinical psychologist to testify as to mental condition, we think the question has been affirmatively resolved by courts in other jurisdictions to obviate the need for any extended *491 discussion here. See Hidden v. Mutual Life Insurance Company, 217 F.2d 818 (4 Cir.), holding it to be reversible error to exclude the testimony of a clinical psychologist as to the existence of a disabling nervous condition in a suit under a disability insurance policy. See also the discussion and cases found in 78 A.L.R.2d 919, an annotation relating to the qualifications of nonmedical psychologists to testify as to mental condition or incompetency.
Affirmed.
WIGGINTON, C.J., and CARROLL, DONALD K., J., concur.