## STATE OF MARYLAND *v.* WILLIAMS

[No. 23 (Adv.), September Term, 1976.]

*Decided July 14, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE and ELDRIDGE, JJ., and J. HAROLD GRADY, Associate Judge of the Eighth Judicial Circuit, specially assigned.

*Donald R. Stutman, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Sandra A. O'Connor, State's Attorney for Baltimore County,* and *Brian Lee Herzberger, Assistant State's Attorney for Baltimore County,* on the brief, for appellant.

*Leonard C. Redmond, III, Assistant Public Defender,* with whom were *Alan H. Murrell, Public Defender,* and *Dennis M. Henderson, Assistant Public Defender,* on the brief, for appellee.

LEVINE, J., delivered the opinion of the Court. SMITH, ELDRIDGE and GRADY, JJ., dissent and SMITH, J., filed a dissenting opinion in which GRADY, J., concurs at page 187 *infra.* ELDRIDGE, J., filed a dissenting opinion at page 195 *infra.*

This appeal arises from a proceeding to redetermine appellee's status as a defective delinquent. At the hearing in the Circuit Court for Baltimore County, the trial judge (Haile, J.) ruled that a psychologist on the staff of Patuxent Institution (Patuxent), though qualified as an expert witness in his field, could not render an opinion on the ultimate issue, whether appellee was a defective delinquent.[1] That ruling is challenged on appeal by the State in consequence of a jury verdict that appellee was no longer a defective delinquent. We granted certiorari to decide this important question prior to consideration by the Court of Special Appeals.

After receiving a five years' sentence in November 1967 for the crime of assault, the third in a series of convictions spanning several months, appellee was found to be a defective delinquent and was transferred to Patuxent in 1969. A like adjudication was made at a redetermination proceeding in 1972. The issue resulting in this appeal arose at a second redetermination hearing in 1975.

Immediately prior to the commencement of the latest hearing, the court granted appellee's motion to delete from the Patuxent reports all expressions of opinion by a staff

---

1. A "defective delinquent" is defined by Maryland Code (1957, 1976 Repl. Vol.) Art. 31B, § 5 "as an individual who, by the demonstration of persistent aggravated antisocial or criminal behavior, evidences a propensity toward criminal activity, and who is found to have either such intellectual deficiency or emotional unbalance, or both, as to clearly demonstrate an actual danger to society so as to require such confinement and treatment, when appropriate, as may make it reasonably safe for society to terminate the confinement and treatment."

psychologist that appellee was a defective delinquent. During the trial, the State called as its only witness the same psychologist, Alan W. Strange, who held a master's degree in both clinical and community psychology and had by then been on the Patuxent staff for approximately one year. Previously, he had participated in two internships in the field of child guidance and had served as a personnel psychology specialist at a military hospital for two years, as a caseworker with the Travelers' Aid Society for one year and as a social worker in the child welfare field for 1 $1/2$ years.

During his testimony, the psychologist was permitted to read to the jury, subject to the excisions which the trial judge had previously ordered, the latest Patuxent report of appellee's condition. This report, prepared in accordance with Maryland Code (1957, 1976 Repl. Vol.) Art. 31B, § 7 (a), had been signed by a psychiatrist, another physician, and by the psychologist himself. That portion of the report which was read to the jury revealed an opinion of the examining team that appellee's status as a defective delinquent had not changed since the 1972 hearing and a recommendation that his commitment to Patuxent be continued. The witness was also permitted to relate the various psychological tests he had conducted on appellee, and to inform the jury of the results. Additionally, appellee's course of conduct at Patuxent, not all of which reflected favorably upon him, was described to the jury. Finally, although the psychologist was precluded from rendering his individual opinion that appellee yet remained a defective delinquent, he was permitted by the court to state that he agreed with the recommendation contained in the report. The only psychiatrist to testify at the hearing was one who had been appointed by the circuit court at the request of appellee to conduct an examination and to appear as a witness on his behalf. This psychiatrist testified that in his opinion appellee was no longer a defective delinquent.

As we have indicated, the trial judge, while allowing the psychologist to relate to the jury the recommendation in the Patuxent report that appellee's confinement be continued,

excised from the report the witness's opinion on the ultimate issue of defective delinquency and prevented him from testifying in that regard during the trial. Although the precise basis for these rulings was not stated, it is apparent that the court agreed with appellee's argument — also made here — that the ultimate diagnosis of defective delinquency is a medical question upon which a psychologist may not give his opinion.

In attacking the circuit court ruling, the State relies on a handful of cases decided by this Court. Since none lends support to its position, they merit only brief comment. Thus, the State cites *McDonough v. Director*, 229 Md. 626, 634, 183 A. 2d 368 (1962), as "approv[ing] testimony by a psychologist on the ultimate issue as to whether the individual was a defective delinquent." Actually, the only question considered in *McDonough* which is even remotely relevant to this case was whether the report of a psychologist formerly employed at Patuxent but not available to testify, containing the results of standard tests and his evaluation of the inmate, could be read to the jury by another psychologist then a member of the Patuxent staff. In *Crews v. Director*, 245 Md. 174, 179, 225 A. 2d 436 (1967), we were concerned with whether a psychiatrist not licensed in the State of Maryland could testify as an expert witness. While certain of the dicta in that opinion might be taken as approving the admissibility of a defective delinquency opinion of a psychologist, that proposition was neither decided nor presented.

Although at first blush *Hall v. Director*, 245 Md. 687, 691, 226 A. 2d 669 (1967), appears to stand for the proposition that a psychologist can testify on the ultimate issue of defective delinquency, and also seems to attribute such a holding to *Caplin v. Director*, 244 Md. 103, 223 A. 2d 166 (1966), the actual issue there was whether a psychologist could so testify despite his failure to produce in court the tests which formed the basis for his opinion. The reference there to *Caplin* is qualified in terms of whether the psychologist's scientific competence was challenged, a question raised in neither of those cases. Finally, in *Schultz*

*v. Director,* 227 Md. 666, 177 A. 2d 848 (1962), the issue was whether, in admitting opinion testimony by a psychiatrist and a psychologist on the ultimate issue of defective delinquency *vel non,* the court had thus allowed the witnesses to usurp the function of the jury. In sum, we have yet to reach the question presented here.

Nor have we ever flatly decided the closely related though, in our view, distinguishable question whether a psychologist's opinion is admissible in criminal cases on the subject of mental disease or responsibility. Although raised in *State v. Tull,* 240 Md. 49, 212 A. 2d 729 (1965), we did not pass on the issue, having decided that case on other grounds. In a scholarly discussion, however, Judge Hammond there reviewed for the Court a number of decisions in other jurisdictions and found them divided "on whether a psychologist is qualified to express an opinion as to mental disease or condition, as opposed to giving factually the results of his tests on and observations of the patient." *State v. Tull, supra,* 240 Md. at 55. This division of authority still persists, although it now appears that a majority of courts would admit such testimony, at least in those instances where the witness meets appropriate standards prescribed for psychologists who seek to qualify as expert witnesses on the subject of criminal responsibility.[2] Although we are not concerned here with the matter of criminal responsibility, it bears mentioning that a secondary argument made by appellee is that the psychologist in this case was not qualified under the exacting standards which must be met by one rendering an expert opinion on what is generally

---

**2.** *See, e.g.,* United States v. Green, 373 F. Supp. 149 (E.D. Pa.) *aff'd without opinion,* 505 F. 2d 731 (3rd Cir. 1974), *cert. denied,* 420 U. S. 978 (1975); United States v. Riggleman, 411 F. 2d 1190, 1191 (4th Cir. 1969); Jenkins v. United States, 307 F. 2d 637, 643-46 (D.C. Cir. 1962); People v. Pennington, 66 Cal. 2d 508, 58 Cal. Rptr. 374, 426 P. 2d 942, 950 (1967); Henderson v. State, 308 N.E.2d 710 (Ind. App. 1974); State v. Robertson, 108 R. I. 656, 278 A. 2d 842, 845-46 (1971); Roberts v. State, 41 Wis. 2d 537, 164 N.W.2d 525, 532 (1969); *contra,* People v. Gilliam, 16 Ill. App. 3d 659, 306 N.E.2d 352, 355-56 (1974); State v. Alexander, 252 La. 564, 211 So. 2d 650, 654 (1968); Sherrill v. State, 14 Md. App. 146, 158, 286 A. 2d 528 (1972); Millard v. State, 8 Md. App. 419, 428-29, 261 A. 2d 227, *cert. denied,* 257 Md. 735 (1970); Saul v. State, 6 Md. App. 540, 548-50, 252 A. 2d 282 (1969), *aff'd,* 258 Md. 100, 265 A. 2d 178 (1970).

recognized as a medical subject. We shall not, however, rest our decision on that premise, since we think the issue before us is controlled by narrow statutory considerations and is therefore distinguishable, in any event, from the question involved in cases where criminal responsibility is at issue.

The early history of the defective delinquency law, and the procedure under which it operates, was extensively reviewed in *Director v. Daniels*, 243 Md. 16, 221 A. 2d 397, *cert. denied*, 385 U. S. 940 (1966), where the law was subjected to constitutional attack on various grounds. There, we quoted with approval from *Sas v. State of Maryland*, 334 F. 2d 506, 516 (4th Cir. 1964):

> " ' . . . [The defective delinquency statute] substitutes the concept that there is a category of legally sane persons who by reason of mental or emotional deficiencies "evidence a propensity toward criminal activity," which they are incapable of controlling. For those in the category who are treatable it would substitute *psychiatric treatment* for punishment in the conventional sense and would free them from confinement, not when they have "paid their debt to society," but when they have been sufficiently cured to make it reasonably safe to release them.' " (emphasis added). *Director v. Daniels, supra,* 243 Md. at 31.

Elsewhere we stated:

> " . . . [T]here does in fact exist a class or group of persons falling within the definition [of defective delinquency], constituting a danger to the health and safety of people and who, with the aid of *medical expert testimony*, after appropriate examination, using recognized medical techniques, are discernible and recognizable by lay persons, including judge or jury." (emphasis added) *Id.* at 33.

Indeed, without belaboring this opinion, it is safe to say that *Daniels* is riddled with emphasis on the condition of

defective delinquency as a psychiatric concept, while acknowledging that when properly applied and related to the individual subject by expert medical testimony, the term itself is one readily understood by lay persons. Although intellectual deficiency, one of the two alternative criteria for determining defective delinquency under the § 5 definition, is apparently regarded as a "psychiatric-psychological" term, the other, emotional unbalance, "refer[s] to a definite type of medically recognized psychiatric disorder," *Director v. Daniels, supra,* 243 Md. at 54.

That the professionals affiliated with Patuxent themselves have consistently recognized that the diagnosis of defective delinquency rests primarily on psychiatric criteria is overwhelmingly reflected in literature authored, in whole or in part, by members of the Patuxent staff, all of which we considered as part of the record in *Daniels.*[3] While none of the massive collection of data assembled for the benefit of the General Assembly by the architects of the defective delinquency law explicitly states that expert medical testimony is a sine qua non to the adjudication of defective delinquency, one cannot read these documents without concluding that from the very beginning this was nevertheless intended to be the case.

Concededly, the statute itself is not explicit on this point. Section 8 of Art. 31B, entitled "Hearings," makes no reference to the witnesses who are to testify in court on the issue of defective delinquency. Section 7, entitled "Examinations," though, is perhaps more expressive of the legislative intent. Subsection a of § 7 requires that examinations to determine possible defective delinquency be conducted by at least three persons, a medical physician, a psychiatrist and a psychologist. Thus, medical doctors play the dominant role under the statute in the diagnosis

---

[3]. *See, e.g.,* Boslow, Rosenthal, and Gliedman, The Maryland Defective Delinquency Law: Psychiatric Implications for the Treatment of Anti-Social Disorders Under the Law (1959); Boslow, Rosenthal, Kandel and Manne, *Methods and Experiences in Group Treatment of Defective Delinquents in Maryland,* 7 The Journal of Social Therapy (1961); Boslow and Kohlmeyer, The Maryland Defective Delinquency Law: An Eight Year Follow-Up.

of defective delinquency. More revealing, however, is subsection b, which provides that in addition to the examination prescribed by subsection a, the person being examined, if he himself has not initiated the defective delinquency proceedings, is entitled to be examined by a psychiatrist of his own choice, the reasonable costs of which must be paid by the State. As we noted earlier, the psychiatrist selected by appellee was the only expert in that field to testify. Sheer logic, as appellee cogently observes, should indicate that the Legislature would not have provided for a psychiatrist to testify in behalf of the inmate had it not intended that a medical expert likewise appear in court as a state witness on the issue of defective delinquency, and had it not viewed the question of defective delinquency as primarily a medical problem.

We hold, therefore, that a psychologist, though otherwise qualified as an expert witness, may not render an opinion on the ultimate issue of defective delinquency, whether it be at the initial hearing or for purposes of redetermination. Nothing we have said, of course, should be taken as a lack of professional respect for the psychologist who testified in this case or for his profession. We make it plain that psychologists should not only fulfill their statutory duties under Art. 31B, but, if otherwise qualified as expert witnesses, may continue, as here, to testify in defective delinquency proceedings regarding their factual findings, to describe the various tests which they have administered as part of their examinations and report the results thereof, and to give their personal judgments and interpretations relating to those tests.

> *Judgment affirmed; appellant to pay costs.*

*Smith, J., dissenting:*

I respectfully dissent.

I think it should be made abundantly clear at the outset that the issue here does not involve whether the psychologist

was qualified to testify as an expert since the trial court ruled that he was so qualified. An objection had been made on behalf of appellee to the qualification and this objection was overruled. Were the opinion of the majority based upon the argument of the appellee that the trial judge had erred in his determination that the psychologist was in fact qualified — a point urged in this Court by the appellee — my view might be somewhat different.

The majority opinion here stands for the proposition that no psychologist — however well qualified — may ever express an opinion in Maryland as to whether an individual is a defective delinquent. Not only is such a holding out of step with the modern view taken by the majority of courts in this country as to the admissibility of the expert opinion of a psychologist, it is out of step with the plain implication of our earlier cases.

It is true that we have not spoken directly on the issue of whether a psychologist is competent to give an opinion on whether an individual is or is not a defective delinquent. However, in *Purks v. State*, 226 Md. 43, 171 A. 2d 726 (1961), a psychologist was qualified in the trial court as an expert witness. He testified as to his interview with the defendant and to the range of testings that had been made at the time. He was permitted to read to the jury the whole of a copy of his original report made, as Judge Horney put it for the Court, "in the regular course of his duties at [Patuxent I]nstitution and [which] had become a part of the permanent records of the institution — in reply to a question as to the results of such tests." The question on appeal was "limited . . . to 'the question of the admissibility of the reports objected to.'" The Court said it was "contended that the trial court committed reversible error in allowing the director of the institution and the psychologist to read into the evidence over objection the reports that had been prepared as a result of the examinations of and interviews with the appellant." The Court held "that the appellant was not prejudiced by the admission of such reports as evidence." However, in *Schlatter v. Director*, 238 Md. 132, 134, 207 A. 2d 653 (1965), Judge Marbury said for

the Court, citing *Purks*, "We have held that reports of the Patuxent Institution and of examining psychologists are admissible in evidence in a case where the question was whether the individual was a defective delinquent." That opinion also cited *Pierson v. Director*, 235 Md. 654, 202 A. 2d 644 (1964), in which it was contended that "[i]t was reversible error to admit into evidence the findings and conclusions of various members of the Patuxent Institution staff, the contents of the staff report, and the expert opinion of Dr. Boslow [(the director of the institution)] based thereon." It was pointed out in the course of the opinion in *Pierson* that an examination by a psychologist was a part of the Patuxent procedure as required by statute. Judge Marbury there said for the Court that "a careful re-examination of Section 7 (a) of Article 31B leads us to the conclusion that the language contained therein is in itself sufficient to render the staff report admissible."

I am unable to understand any difference between the qualification of an individual to express an opinion on whether an individual is or is not a defective delinquent and the qualification of an individual to express an opinion on whether an individual is legally insane at the time of the commission of a crime, the latter issue being that before the Court in *State v. Tull*, 240 Md. 49, 212 A. 2d 729 (1965). I agree with the majority that in that case Judge Hammond pointed out for the Court that the psychologist there proffered as a witness "gave no evidence or indication of his qualifications other than to testify that he was chief clinical psychologist at Perkins." However, it is significant that in the course of that opinion Judge Hammond observed for the Court:

> "The Courts have divided on whether a psychologist is qualified to express an opinion as to mental disease or condition, as opposed to giving factually the results of his tests on and observations of the patient. See the cases and text and law review writers referred to in the Annotation 'Qualification of nonmedical psy-

chologist to testify as to mental condition or competency,' 78 A.L.R.2d 919, and a full discussion of the subject and authorities in *Jenkins v. United States* (Ct. App. D.C. En Banc), 307 F. 2d 637, in the majority, concurring and dissenting opinions. See also 39 Minn. L. Rev. 235 and 39 Marquette L. Rev. 239, and *cf. Hidden v. Mutual Life Ins. Co.*, 217 F. 2d 818 (4th Cir.). The admissibility of opinion testimony by a psychologist generally is made to turn on the extent of the education, training and experience of the particular nonmedical psychologist offered as a witness. For example, Macdonald, *Psychiatry and the Criminal*, quoted in *State v. Padilla* (N. Mex.), 347 P. 2d 312, 318, says at p. 162:

> 'It is important to be aware of the limitations as well as the merits of psychological tests. It would be unreasonable to demand of the psychologist a decision as to criminal responsibility. In some cases he may be able to answer this question but not invariably, as there is no psychological test designed to determine the criminal reponsibility of a suspect.'

Macdonald adds at p. 171: 'The clinical psychologist is not expected to answer questions concerning the M'Naghten Rules in their application to the suspect.'

"In the *Padilla* case the Court reversed in part because a psychologist without sufficient education, training and experience had been permitted to give his opinion as to the accused's sanity and criminal responsibility. The Court said (p. 318):

> 'We adopt the modern trend of authority in allowing a properly qualified psychologist to give his opinion as an expert as to the result of

tests made by him, but that such testimony should be limited to that which the witness is qualified to offer on the basis of his professional training and experience and which he can substantiate by evidence that would be acceptable to recognized specialists in the same field. See Macdonald, supra, p. 172; Medical Trial Technique Quarterly, 1957 Annual, pp. 9-18; 39 Minnesota Law Review 235; 33 Chicago Kent Law Review 230.

\* \* \*

According to the authorities in the field, the minimum qualifications for a psychologist before being allowed to testify as an expert is that he has had at least five years of postgraduate training in clinical psychology, has a degree of doctor of philosophy and has spent at least one year as a psychology interne in a mental hospital approved by the American Psychological Association. See Macdonald, supra, p. 162; and Medical Trial Technique Quarterly, 1957 Annual, supra.'

The Court added that occasionally a witness might be offered who did not meet these standards but who should be heard because of his 'exceptionally broad experience and training.'

"See also *Jenkins v. United States, supra,* where the Court indicated a broad general agreement, without express reference, with the views expressed in *Padilla,* saying at p. 645 of 307 F. 2d that the proposed witness ordinarily should qualify as an opinion witness if he has a Ph.D. degree in psychology, four or more years of acceptable professional experience in diagnosis and treatment in a hospital or clinical setting in association with psychiatrists or neurologists, and is a diplomate of the American Board of Examiners in Professional Psychology." *Id.* at 55-57.

In *Crews v. Director*, 245 Md. 174, 225 A. 2d 436 (1967), one of the issues before the Court was that the trial court had "erred in permitting Dr. Croce, the Associate Director of Patuxent and the chief of its Psychiatric Department, to testify as an expert witness concerning the applicant's mental condition," the basis of the objection being "that Dr. Croce was not licensed to practice medicine in the State of Maryland." I find significant the language used by the Court in its holding that the trial court did not abuse its discretion in admitting this testimony:

> "The common law does not require that an expert witness on a medical subject shall be a person licensed to practice medicine. *Wilson v. State*, 243 Ala. 1, 8 So. 2d 422 (1942); 2 Wigmore, *Evidence*, sec. 569 and cases cited therein. In Maryland this requirement has not been introduced by statute in respect to defective delinquent proceedings.
>
> "We believe the Court of Appeals for the District of Columbia Circuit aptly stated the proper view concerning the competency of medical experts in *Jenkins v. United States*, 113 U.S. App. D.C. 300, 307, 307 F. 2d 637, 644 (1962):
>
> > 'The kinds of witnesses whose opinions courts have received, *even though they lacked medical training and would not be permitted by law to treat the conditions they described*, are legion. The principle to be distilled from the cases is plain: if experience or training enables a proffered expert witness to form an opinion which would aid the jury, in the absence of some countervailing consideration, his testimony will be received.'
>
> Our predecessors agreed with this principle when they defined 'medical experts' merely as 'persons possessing technical knowledge in relation to matters with which the mass of mankind are supposed not to be acquainted.' *Ager v. Baltimore*

*Transit Co.*, 213 Md. 414, 420, 132 A. 2d 469, 472 (1957).

"The crucial factors in determining the admissibility of any expert testimony is the actual experience of the witness and the probable probative value of his opinion. Provided the witness' other professional experience qualifies him as an expert in the field of mental science and disease, he is competent to render an opinion on that subject in our courts, even though he is not licensed to practice medicine in Maryland." (Emphasis in *Crews.*) *Id.* at 178-79.

In *Hall v. Director*, 245 Md. 687, 226 A. 2d 669 (1967), as correctly stated by the majority, the issue was not whether a psychologist could offer an opinion but a contention that the trial court erred "in permitting Dr. Florenzo, a staff psychologist at Patuxent, to express an opinion that the applicant was a defective delinquent, even though he failed to produce the tests upon which that opinion was based." I find significant, however, that the court said:

"A Patuxent staff psychologist — in fact, Dr. Florenzo — has been held competent to render an opinion on the question of whether the defendant is a defective delinquent. *Caplin v. Director*, 244 Md. 103, 223 A. 2d 166 (1966), where, as here, his scientific competence is unchallenged." *Id.* at 691.

The majority view at the present time appears to permit a properly qualified psychologist to give his opinion as to an individual's mental health. The leading case is that of *Jenkins v. United States*, 307 F. 2d 637 (D.C. Cir. 1962), quoted and cited in *Tull* and *Crews*.

To the list of opinions set forth by the majority in footnote 2 taking the view I take here should be added *Reese v. Naylor*, 222 So. 2d 487, 490 (D. Ct. App. Fla. 1st D. 1969); *People v. Hawthorne*, 293 Mich. 15, 22-25, 291 N. W. 205 (1940) (concurring opinion *joined by a majority of the court*); *State v. Padilla*, 66 N. M. 289, 298, 347 P. 2d 312 (1959)

194

(quoted extensively by this Court in *State v. Tull, supra*); *Carter v. State,* 376 P. 2d 351, 359-60 (Okla. Crim. 1962); *Hogan v. State,* 496 S.W.2d 594, 597 (Tex. Ct. Crim. App. 1973); *Watson v. State,* 161 Tex. Crim. 5, 8, 273 S.W.2d 879 (1954); and *Rollins v. Commonwealth,* 207 Va. 575, 581, 151 S.E.2d 622 (1966), *cert. denied,* 386 U. S. 1026 (1967).

In the context of evaluation of whether an individual is a defective delinquent I find instructive *Hidden v. Mutual Life Insurance Co. of New York,* 217 F. 2d 818 (4th Cir. 1954), to which the Court referred in *State v. Tull, supra.* The controversy there arose over permanent disability clauses in two life insurance policies. The issue was whether Hidden had become totally and permanently disabled within the meaning of the policies. A psychologist was offered as a witness on behalf of the insured. He held a doctor of philosophy degree in clinical psychology. He had had experience in that field in Army hospitals. At the time of trial he was engaged in private practice and also as chief psychologist at Springfield State Hospital. He testified that in his practice patients were referred to him by psychiatrists so that patients might be subjected to a battery of psychological objective tests in order to determine and diagnose their personal problems and their emotional and nervous condition without asking the patients personal questions about themselves. One of the psychiatrists who testified for the insured said that in forming his opinion he depended in part upon the objective tests made by the clinical psychologist. It must be remembered that the testing of a psychologist is an integral part of the evaluation at Patuxent. Code (1957, 1976 Repl. Vol.) Art. 31B, § 7 (a). As Judge Soper put it for the court, "Upon objection, the testimony of this witness was excluded on the ground that he was not qualified as an expert, and an offer to show that in his opinion the insured is totally and permanently disabled, and was in this condition in 1949, was rejected." He went on to say for the court:

"We think, however, that the objection to the ruling on the admissibility of the testimony of the psychologist is well taken. The uncontradicted

evidence received at the trial tended to show that the expert was qualified in his field by academic training and by experience; and also that the objective tests which he described, although perhaps not well known to the general public, were recognized as helpful by medical experts in psychiatry. Moreover, one of the psychiatrists, whose testimony was received, based his opinion as to the condition of the insured in part upon the objective tests given by the psychologist to the insured in this case. Accordingly it is our view that the evidence should have been received, and we are unable to say that its exclusion was harmless since the expert testimony played so large a part in the trial of the case." *Id.* at 821.

I think the expert should be permitted to give his opinion. The weight to be accorded that opinion is for the trier of fact. Hence, I would reverse.

Judge Grady has authorized me to say that he joins in the views expressed in this opinion.

*Eldridge, J., dissenting:*

In my view, the case should be remanded to the Court of Special Appeals with directions to dismiss the State's appeal. For the reasons set forth in the dissenting opinion in *Williams and Fulwood v. Director,* 276 Md. 272, 315-321, 347 A. 2d 179 (1975), I believe that, regardless of the label attached by state law, a defective delinquency proceeding under Maryland Code (1957), Art. 31B, is a criminal proceeding for purposes of the Fifth Amendment to the United States Constitution. And it is well settled that the double jeopardy clause of the Fifth Amendment, applicable to state proceedings by the Fourteenth Amendment, prohibits the prosecution from seeking appellate review of a verdict in a criminal proceeding, *United States v. Sisson,* 399 U. S. 267, 289-290, 90 S. Ct. 2117, 2129-2130, 26 L.Ed.2d 608 (1970); *Fong Foo v. United States,* 369 U. S. 141, 143, 82 S. Ct. 671, 672, 7 L.Ed.2d 629 (1962); *Kepner v. United States,*

195 U. S. 100, 24 S. Ct. 797, 49 L. Ed. 114 (1904); *Ball v. United States*, 163 U. S. 662, 671, 16 S. Ct. 1192, 1195, 41 L. Ed. 300 (1896). Consequently, the jury's verdict that the appellee was no longer a defective delinquent should have finally terminated the defective delinquency proceedings, and an appellate court has no jurisdiction to entertain an appeal by the State from that verdict.