# BRUCE EDWARD WENTWORTH v. STATE OF MARYLAND

[No. 1352, September Term, 1975.]

*Decided October 7, 1976.*

The cause was argued before GILBERT, C. J., and MORTON and LOWE, JJ.

*Jack F. McGarvey, Assigned Public Defender,* for appellant.

*Donald R. Stutman, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Sandra A. O'Connor, State's Attorney for Baltimore County,* and *Brian C. Covahey, Jr., Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

The direct and indirect legal assault upon the Patuxent Institution concept continues like the never ending beating of the surf upon the shore. In this case, we are called upon to decide whether error was committed when certain challenged evidence was admitted into a defective delinquency hearing held in the Circuit Court for Baltimore County.

At a jury trial to determine the defective delinquency *vel non* of Bruce Edward Wentworth, the State, over objection, was permitted to elicit from a Patuxent staff psychologist, (1) that, in the psychologist's opinion, Wentworth was a defective delinquent, (2) the extent of Wentworth's arrest record, including those offenses for which he had been convicted, and (3) Wentworth's juvenile involvement with the law.

We agree with the appellant Wentworth that the evidence was improperly admitted, and for the reasons stated *infra* we reverse the judgment of the circuit court and remand the matter for a new hearing.

The record reveals that the psychologist [1] read to the jury the contents of the "Diagnostic Staff Report" that had been submitted to the Court by the Patuxent Institution. The witness was then asked: "What is your opinion today within a reasonable degree of certainty as to whether . . . the Defendant, Bruce Wentworth, is an individual who has demonstrated a persistent, aggravated, antisocial, or criminal behavior, so as to evidence a propensity for criminal activity, and is either of such intellectual deficiency, or emotional unbalance, or both, so as to clearly demonstrate an actual danger to society?" The witness responded, "I believe he meets that definition."

Subsequently, the psychologist was asked by the Assistant State's Attorney, "In your opinion then, can you state whether or not the Defendant . . . is a defective

---

1. We note in passing that the psychologist-witness was not the psychologist that signed the Staff Report, nor had he examined Wentworth. The testimony of the witness was based solely upon his review of the institutional records and reports.

delinquent as defined by the applicable law in Maryland today?" After the trial judge overruled an objection, the witness responded, "In my opinion, Mr. Wentworth does meet the definition of a defective delinquent." [2]

Recently, in *State v. Williams*, 278 Md. 180, 361 A. 2d 122 (1976), the majority of the Court of Appeals,[3] while seemingly sanctioning the practice of permitting a psychologist "to relate to the jury the recommendation in the Patuxent report that . . . [the alleged defective delinquent's] confinement be continued," flatly held:

> ". . . [A] psychologist, though otherwise qualified as an expert witness, may not render an opinion on the ultimate issue of defective delinquency, whether it be at the initial hearing or for the purposes of redetermination." 278 Md. at 187.

*Williams* is dispositive of the first issue presented by Wentworth and requires reversal of the instant case.

Because it is apparent that this case will, in all probability, be retried, we shall, for the guidance of the trial court, pass upon the other two issues raised by appellant.

As we have previously indicated, the psychologist was allowed, despite appellant's strenuous objection, to read to the jury the full extent of the appellant's involvement, as an adult, with the police. The "record" of the appellant as related at trial shows the following:

---

2. A defective delinquent is defined in Md. Ann. Code art. 31B, § 5.

3. The Court adopted the opinion by a vote of 4-3.

| Date | Offense | Disposition |
|------|---------|-------------|
| Aug., 1969 | Armed Robbery & Conspiracy | Not Guilty |
| Sept., 1969 | Burglary | No Disposition Shown |
| July, 1970 | Disorderly Conduct | Probation Before Verdict and Fined $10 & Costs [4] |
| Feb., 1971 | Possession of Deadly Weapon & Assault by Threat | No Disposition Shown |
| March, 1972 | Assault by Threat | 9 Months |
| Feb., 1973 | Assault, Openly Carrying Deadly Weapon | Year [5] |
| July, 1973 | Grand Larceny | Nol Pros. |
| Nov., 1973 | Larceny after Trust | Nol Pros. |
| Jan., 1974 | Manslaughter | 8 Years [6] |

In addition, the witness recounted that appellant had "allegedly" been ". . . involved in an incident . . . where several lockers were broken into." [7]

Counsel for the appellant objected to the revelation of the prior arrests which admittedly did not result in convictions. The trial judge, in overruling the objections, stated in pertinent part:

"And I will overrule . . . [the objection] because this is a very interesting point, there has been no case to our knowledge that has ruled on it. Some have skirted the issue, but I think it is proper to put

---

4. *But see* Comm'r of Motor Vehicles v. Lee, 254 Md. 279, 255 A. 2d 44 (1969), in which it was held that such a disposition is improper. A fine and probation before verdict are patently inconsistent.

5. Imposition of sentence occurred the same day appellant was released from the March, 1972, sentence. No explanation is given as to how or why the 9 month sentence was extended to eleven (11) months.

6. The offense for which appellant is presently incarcerated.

7. This matter seemingly occurred in November, 1972, while appellant was on a work-release program, but appellant was not charged with any offense.

> it on, because they are items on which the people at Patuxent based their determination on [sic], and I think if there is any danger, it could easily be cured by a simple question or cross examination . . . ."

This Court, in *Arbaugh v. Director*, 27 Md. App. 662, 341 A. 2d 812 (1975), *cert. denied*, November 3, 1975, condemned the use of a pending indictment as evidence in a defective delinquency case. Moreover, in *Arbaugh*, we interpreted the statement from *Weeder v. State*, 274 Md. 626, 632, 337 A. 2d 67, 70 (1975), that ". . . the report of the staff should include relevant information from the study made by the social worker, *a summary of the inmate's prior arrests and convictions* . . ." (emphasis added) to mean ". . . arrests upon which convictions have been grounded." 27 Md. App. at 664.

Judge Lowe, writing for the Court in *Chenault v. Director*, 28 Md. App. 357, 350-61, 345 A. 2d 440, 443 (1975), stated:

> ". . . [E]vidence of an arrest (as distinguished from actual acts of misconduct) is not relevant, 3A *Wigmore on Evidence*, sec. 980 a, and if admitted is not harmless error because of its potentially prejudicial effect upon a jury."

The State, in the instant case, notes, however, that the Court of Appeals, in *Davis v. Director*, 243 Md. 734, 736, 223 A. 2d 262, 263 (1966), a short per curiam opinion, said:

> "With respect to the arrest for homosexuality which appeared in the medical report read by Dr. Boslow, in view of the civil nature of these proceedings and the admissibility of evidence of prior antisocial behavior (*see Rice v. Director*, 238 Md. 137, 207 A. 2d 616 . . . [(1965)]), and since the arrest did in fact occur and applicant had ample opportunity to show that he was found innocent of the charge, there is no showing of prejudice here."

From the quoted language, the State concludes that evidence of arrest, even *sans* convictions, is admissible. We, however, have a different view. Initially, we do not read *Davis* in the same light as does the State. In *Davis*, there

was but one arrest which the Court concluded did not prejudice the jury, while in the case now before us, there were several arrests upon which there was no conviction, and, in fact, one instance where there was not even a charge, but merely a bald allegation. We think the totality of the "police record" could not help but inflame the jury against appellant.

We further note that the above-quoted statement from *Davis* relies for its support upon *Rice v. Director, supra. Rice*, however, does not speak of arrests but rather the admission of "juvenile offenses" which we infer were findings of juvenile delinquency under the then existing juvenile law. Nowhere in *Rice* does it appear that the Court held that all prior arrests, with or without convictions entered thereon, are admissible in a defective delinquency proceeding.

Further examination of the case law by the Court of Appeals compels us to conclude that the language we have quoted from *Davis* simply did not mean what the State takes it to mean. *See, e.g., Schlatter v. Director*, 238 Md. 132, 207 A. 2d 653 (1965), wherein it is said a juvenile record (again, inferentially, one of juvenile delinquency) is admissible. *Schlatter* cites *Bullock v. Director*, 231 Md. 629, 190 A. 2d 789 (1963), which seems to hold that ". . . records of the juvenile and magistrate's courts" are admissible as ". . . [e]vidence of prior anti-social behavior . . ." and cites *Height v. State*, 225 Md. 251, 170 A. 2d 212 (1961). The Court, in *Bullock*, was speaking, not simply of petitions filed against the juvenile, but rather of actual findings of juvenile delinquency. The reference to "records of the . . . magistrate's courts" means, to us, convictions in the magistrate's court, not merely arrests. The citation of *Height* in *Bullock* is puzzling because *Height* holds that the then Md. Ann. Code art. 31B, § 15 precluded "convictions" in magistrates' courts from being counted under § 6 (a)(5) as a conviction in a criminal court.[8]

Although we have endeavored to point out that the basis

---

8. Current Md. Ann. Code art. 31B, § 15 provides that a conviction and sentence in the District Court is a conviction within the meaning of § 6 thereof.

for the *Davis* quotation is more hazy than clear, and more flimsy than solid, we are satisfied, in any event, that the admission into evidence of the appellant's arrest record was, in any event, unlike *Davis*, prejudicial.

We reiterate what we said in *Arbaugh v. State, supra,* that evidence of arrest is not admissible in a civil case. *Bonaparte v. Thayer,* 95 Md. 548, 559, 52 A. 496, 499 (1902), followed in *Nelson v. Seiler,* 154 Md. 63, 68, 139 A. 564, 566 (1927), makes unmistakable that, ". . . the Courts of this State have always recognized the distinction pointed out in 1 *Greenleaf on Ev.* (16 ed.) sec. 461, between actual misconduct, itself, and the charge of misconduct; and have excluded the latter." We further emphasize that the *Weeder, supra,* use of the phrase "prior arrests and convictions" pertains only to those "arrests upon which convictions have been grounded." *Arbaugh, supra* at 664.

A defective delinquency proceeding being a civil case, *McDonough v. State,* 253 Md. 547, 253 A. 2d 517 (1969); *Director v. Daniels,* 243 Md. 16, 221 A. 2d 397 (1966); *Bush v. Director,* 22 Md. App. 353, 324 A. 2d 162, *cert. denied,* 272 Md. 745 (1974), the rule of *Bonaparte v. Thayer, supra,* is both apposite and dispositive of the issue.

We now consider the matter of the admission of the appellant's juvenile record into evidence. The trial judge reasoned that *Rice v. Director, supra,* and *Gray v. Director,* 245 Md. 80, 224 A. 2d 879 (1966), authorized the admission of such records. While it is true that the Court, in *Rice, Gray, Bullock,* and *Schlatter,* did say that juvenile delinquency records are admissible in defective delinquency cases, the Legislature, in its wisdom, by Ch. 554, Laws 1975, modified those Court holdings. Md. Ann. Code, Courts & Judicial Proceedings Art., § 3-824 (b), effective July 1, 1975, provides:

> "An adjudication and disposition of a child pursuant to this subtitle are not admissible as evidence against the child in any criminal proceeding prior to conviction, *or in any other proceeding.*" (Emphasis added).

The words "or in any other proceeding" were added to the statute by the 1975 amendment. The trial judge acknowledged that the language of the present statute is different from that in use when *Rice* and *Gray* and similar cases were decided, but he thought that the Legislature did not intend "to preclude this type of admission in cases involving Patuxent determinations." We, however, believe that the use of the phrase "or in any other proceeding" specifically forbids the introduction into evidence of the juvenile record in any case except a criminal case and *only then after conviction.* Obviously, the permitted use of the juvenile record after conviction is for the edification of the trial judge in his approach to employing a proper disposition.

Apparently, at the request of the Governor's Commission on Juvenile Justice, House Bill 969 was introduced at the 1976 Session of the General Assembly. Embodied in that Bill was a substantial change which would have allowed the admission of a juvenile record into evidence in a defective delinquency hearing.[9] Although H.B. 969 was enacted by Ch. 463, Laws 1976, that portion of the Bill which sought to lift the ban on juvenile records as evidence in defective delinquency cases was stricken from the Bill by amendment before enactment. We infer from the deletion from H.B. 969 of the proposed amendment to Courts Art., § 3-824 (b) that the Legislature was of the opinion that it had made vividly clear its stand by the enactment of Ch. 554, Laws 1975,[10] and that it had no intention to retreat therefrom.

---

**9.** H.B. 969 would have amended Courts Art., § 3-824 (b), so as to provide:

"An adjudication and disposition of a child pursuant to this subtitle are not admissible as evidence against the child:

(1) In any criminal proceeding prior to conviction; or

(2) In any adjudicatory hearing on a petition alleging delinquency; or

(3) *In any civil proceeding not conducted under this subtitle except proceedings under Article 31B."*
(Emphasis added).

**10.** Codified as Courts Art., § 3-824 (b).

One of the avowed legislative purposes for the juvenile procedures act is set forth in Courts Art., § 3-802 (a)(2):

> "To remove from children committing delinquent acts the taint of criminality and the consequences of criminal behavior. . . ."

Subsection (b) mandates that the act is to be construed liberally so as to effectuate its purposes.

Keeping in mind the expressed intent of the General Assembly as stated in Md. Ann. Code, Courts and Judicial Proceedings Art., § 3-802, and the implicit intent properly deducible from the Legislature's deletion from H.B. 969 of the proposed change to Courts Art., § 3-824 (b), we hold that Courts Art., § 3-824 (b) must be read as proscribing not only the admission into evidence of a juvenile record prior to conviction in a criminal case, *Carroll v. State*, 19 Md. App. 179, 310 A. 2d 161 (1973), but as prohibiting its use at *any time in any other type of proceeding*, including defective delinquency cases.

The admission of the juvenile delinquency record of a person into evidence, except after conviction in a criminal case, violates the tenets of Courts Art., § 3-824 (b) and is reversible error.

> *Judgment reversed.*
> *Case remanded for a new hearing.*
> *Costs to be paid by Baltimore County.*